Where a creditor received from his debtor an order on a third person for the amount of his debt, dated the 9th *December*, 1804, and. which the drawee agreed to pay in ten or fifteen days, and the order was not presented until *March*, or many weeks after, and in the mean time the drawee failed; it was held, that the holder had not used due diligence to get the money, and that the loss ought to fall upon him.

## Brower *against* Jones.

THIS was an action of *assumpsit.* The first count was on a bill of exchange ; the second was for money had and received to the use of the plaintiff. The cause was tried at the *Dutchess* circuit, before Mr. Justice *Thompson*, on the 21st *September*, 1807.

The plaintiff produced and proved the following bill or order :

### IN CHANCERY.

Smith W. *Jones*  
 v.  } STATEMENT.  
Thomas *Thorn.*

April 9th, 1800.

Balance due this day, after the payment of 235 dollars to *Peter Mesier*, jun. £129 7 9  
Interest to the 9th *December*, 1804, · 42 5 1

_____

£171 12 10

SIR,

Please to pay to *William Brower*, or·order, the amount within mentioned, and this shall be your discharge.

.*December* 9th, 1804.

From your's &c.  
Smith W. *Jones.*

" To *James Scott Smith*, esq.  
Witness, *Cornelius W. Brower.*"

The witness, *Cornelius W. Brower*, testified, that he was present at a conversation between the plaintiff and defendant previous to the defendant's giving the order, from which he understood, that the defendant being considerably indebted to the plaintiff, agreed to deliver to the plaintiff a mortgage of one *Thomas Thorn*, as a further security for the money due to the plaintiff ; that the plaintiff had demanded payment of the mortgage of *Thorn*, which he had refused, and that the mortgage had been put into the hands of *Peter Mesier*, jun. to have it

foreclosed, and it was agreed, that when the money due on the mortgage should be collected, it should be received by the plaintiff in discharge of his demand against the defendant; that *Mesier* had delivered the mortgage to *James Scott Smith* to do the business, and that *Smith* had received the money, but refused to pay it to the plaintiff, and would pay it only to the defendant or his order; that the plaintiff and defendant went from *Dutchess* county, where they resided, to *New-York*, for the purpose of receiving the money, and giving the necessary discharge to *Smith*; that the plaintiff and defendant called on *Smith* and demanded the money of him; that *Smith* said he could not then pay it, that he had kept the money a long time in his hands, but had lately made use of it; and that he would pay it in ten or fifteen days, and proposed to accept an order drawn on him by the defendant in favour of the plaintiff for the amount; to this the plaintiff objected, declaring that he would not accept *Smith* for the payment, but would look to the defendant alone for the money. After much conversation the above order was finally drawn. At the time it was signed, the defendant asked *Smith* whether, in case it was not paid at the time agreed upon, it would be as obligatory on him as a promissory note? to which *Smith* answered, that it would amount to pretty much the same thing; that the plaintiff then received the order, on the express condition, that if *Smith* did not pay it, the defendant was to be accountable for the amount; that the plaintiff in *March*, 1805, called on *Smith* for payment, who said that he was unable to pay it, but that he would pay it in a few weeks. It appeared that the plaintiff had been called upon for the money in *April*, 1805, and had refused payment.

On the part of the defendant, *Smith* was called as a witness, and testified, that prior to 1800, *Mesier* put into his hands a mortgage given by *Thorn* to the defendant, and assigned by him to the plaintiff, in order to have the same foreclosed; that he caused the mortgage to be foreclosed, and received the money due upon it, of which he

NEW-YORK,
May, 1808.

Brower
v.
Jones.

gave notice to *Mesier ;* that the assignment to the plaintiff was so defective, that it became necessary to make the defendant the complainant in the bill for a foreclosure ; that after the notice was given to *Mesier* of the money being collected, the plaintiff called on the witness with a letter from *Mesier*, mentioning him to be the person to whom the mortgage was assigned, and to whom and to *Mesier* the money belonged ; that the plaintiff frequently called on the witness about the money collected on the mortgage, and was told by the witness that the mortgage and assignment indorsed had been given up to the purchaser under the decree of foreclosure ; and that as the suit was in the name of the defendant it was necessary, for the security of the witness, to have a discharge from the defendant, when the money was paid ; that the witness gave to the plaintiff an order of the same purport as the one above stated, which the plaintiff agreed to take to the defendant to be signed by him, and to return with it and receive the money ; that the plaintiff frequently said that the defendant had no interest in the money, and was dissatisfied that the witness should insist on a discharge from him ; that some time afterwards, the plaintiff and defendant called on the witness, when he understood that the defendant had refused to sign the order shown to him by the plaintiff, but had come to inform the witness that he had no interest in the money, and that he might pay it over to the plaintiff ; that the witness told the defendant that as the mortgage and assignment had been delivered to the purchaser of the premises, it was necessary that the witness should have some writing from the defendant to prove that he had paid over the money ; that the witness then made the statement, and drew the order above stated, which the defendant, on being assured by the witness that it was a matter of form only, and that the defendant would not be injured by it, after some hesitation, consented to sign ; that the witness then informed the plaintiff, that he would pay the money in about ten days ; that he afterwards pro-

vided money for the purpose, and should have paid the order at the time limited, or within two or three weeks, had it been presented. The witness admitted that the money had been demanded or the order presented, several times during the winter, and that he had refused payment; and that before the order was presented in *March*, his circumstances had become so embarrassed, that he was unable to pay his debts ; that the witness always considered the money as belonging to the plaintiff ; that the defendant had no interest in it, but gave the order merely at the request of the witness, and for his indemnity.

On this evidence, the jury found a verdict for the plaintiff, for 516 dollars and 68 cents.

A motion was made to set aside the verdict, as being against evidence.

*J. Tallmadge*, for the defendant.

*Rudd*, contra.

VAN NESS, J. Admitting that an action can be maintained on the order stated in this case, I think that upon the facts now before us, the plaintiff ought not to recover.

If the order had been drawn to secure the payment of a pre-existing debt due from the defendant to the plaintiff, and that fact had been satisfactorily and clearly proved, the plaintiff's case would have been much stronger. There is some reason to believe that such is the fact, but the evidence leaves it doubtful whether the plaintiff's demand had not been extinguished by the assignment of the mortgage against *Thorne*.

*Cornelius W. Brown* and *James S. Smith*, the former a witness on the part of the plaintiff, and the latter on the part of the defendant, differ very materially in their relation of the circumstances attending the giving of the order, and of what took place afterwards. As far as their testimony was irreconcileable, the finding of the jury is conclusive ; they having the right to judge to which of them they would give credit. *Smith*, however, is not impeached,

and some facts are stated by him, and not disproved or contradicted by *Brown*, which, in my opinion, entitled the defendant to a verdict. The order is dated the 9th of *December*, 1804, and was accepted by *Smith* to be paid in ten or fifteen days. *Smith* says, that at the time limited and for two or three weeks thereafter, he was willing and prepared to pay it; but that the order was not presented for payment until some time in the ensuing *March*, when he had become insolvent.

Independently of its being the duty of the plaintiff to present the order for payment at the time when *Smith*, by the terms of his acceptance, agreed to pay it; and independently also of the plaintiff having failed to prove any kind of notice of non-payment to the defendant, I am inclined to think that the defendant is discharged, on the ground of gross negligence on the part of the plaintiff, whereby this money has been wholly lost.

I think it highly probable, also, that the plaintiff accepted the mortgage and assignment thereof, in satisfaction of his demand against the defendant. If that be so, justice has been done, and the plaintiff ought not to recover on this order. The court are, therefore, of opinion, that a new trial ought to be granted, on payment of costs.

New trial granted.