## Murfey and others *vs.* Brace and others.

In an action by a vendor to recover the possession of goods alleged to have been obtained from him by the purchaser, by means of false and fraudulent representations, proof of what the purchaser said, at the time of the purchase, in regard to the reasons for his not trading with another firm, viz. that that firm had refused to trust him without security, is immaterial and irrelevant.

Nor can evidence be given of representations made by the purchaser, to another firm, in respect to his pecuniary circumstances, about the time of his purchase from the plaintiff; where it is not shown, or pretended, that he purchased any goods of that firm on credit, or that he had defrauded or intended to defraud such firm.

Proof that a person about purchasing goods, makes false representations, in respect to his responsibility, to one firm, will not prove, nor tend .to prove, that he made similar representations to another firm, of whom he purchases.

Such a case is distinguishable from the cases in which it has been held that, on questions of fraud in the sale or purchase of property, similar transactions of the alleged fraudulent party, with other persons, at about the same time of the transaction in question, may be proved, with a view of showing the *quo animo.*

It is a most salutary rule that the decision of a referee, upon a question of fact—especially of fraud, where there is evidence on both sides, and the point is not entirely free from doubt—cannot be disturbed.

APPEAL by the plaintiffs, from a judgment entered upon the report of a referee. The action was brought to recover the possession of goods sold by the plaintiffs, merchants in New York, to one Thomas Sampson jun. of Macedon, Wayne county ; on the ground that the goods were obtained by Sampson, by

means of false and fraudulent representations made by him as to his pecuniary circumstances and responsibility, at the time of making the purchase. The goods were in the possession of the defendants, who claimed to hold the same under and by virtue of an assignment made by Sampson, to them, in trust for the benefit of creditors. On the trial before the referee, Thomas J. Salsman was examined as a witness for the plaintiffs, and testified that in 1853 he was in the employ of the plaintiffs, as their clerk and salesman; that on the 22d of November, Sampson came to the plaintiff's store; witness asked him how trade was; he said he was doing a very good trade; that he had sold his stock down quite low, &c. Witness was asked "Did he say any thing about his having traded in September previous, with Williams, Bradford & Co. of New York?" Answer: "He did." Question. "What did he say?" Objected to as irrelevant and incompetent. The plaintiffs offered to show that Sampson, on the occasion referred to in the question, told witness, in speaking of the houses in the city where he had traded, that he did not intend to buy any more goods of Williams, Bradford & Co. That witness asked him why. That he, in answer, explained the reason to be, that after laying out the goods they had refused to trust him without security, and that then Sampson went on to say that they had no need to distrust him or to be afraid of him, as he was good—and that Sampson, in that connection, made further statements to witness as to his own responsibility. The referee sustained the objection, and overruled the offer, except that he decided that the witness must be confined to what Sampson said as to his circumstances. To this decision and ruling of the referee the plaintiff's counsel excepted. This evidence was again offered, on the re-examination of the witness, and again excluded. Sampson, the purchaser of the goods, was examined as a witness. It had been previously proved that he purchased a bill of goods of Phillips & Spencer in New York, at about the time he purchased of the plaintiffs. The plaintiff's counsel put the following question to him: "Did you make any representations as to your pecuniary circumstances to Phillips & Spencer or

either of them, at their store, 68 Liberty street, New York, on the 15th or 16th of September, 1853 ?" The defendants' counsel objected to the evidence as immaterial. The referee sustained the objection, and the plaintiff's counsel excepted to the decision and ruling of the referee.

The referee reported that the property in question was the property of the defendants, and not of the plaintiffs, and found the value thereof to be $457.80; for which sum, with interest and costs, the defendants had judgment.

*Smith & Cornwell*, for the plaintiffs.

*O. H. Palmer*, for the defendants.

*By the Court*, T. R. STRONG, J. The decision of the referee upon the objection to the question to the witness Salsman, as to what Sampson, the assignor of the defendants, said to him in regard to trading with Williams, Bradford & Co., was correct. The offer connected with the question, explains what the plaintiffs proposed to prove, and all that was excluded by the decision was, the declaration of Sampson that that firm had refused to trust him without security, and he did not intend to buy any more goods of them. That was wholly immaterial in this case. It would not have tended to prove any representation to the plaintiffs concerning his circumstances, any intention on his part to defraud the plaintiffs, or any fact essential to be established by them. So far as he said any thing about his circumstances, proof of it was allowed by the referee.

There was nothing in the cross-examination of the witness which rendered the evidence excluded proper, when it was again offered on his re-examination.

I think the decision of the referee, excluding the testimony of Sampson, who was called as a witness by the defendants, on his cross-examination, as to representations in respect to his circumstances to Phillips & Spencer at their store, about the time of his last purchase of the plaintiffs, was also correct. The question to the witness on that subject is not limited, and does

not point to any transaction he had with the firm; it was not proved, or proposed to be proved, that he purchased any goods of that firm on credit; on the contrary, it appeared that he paid for the goods he bought of them at the time of the purchase. There is no pretense that he defrauded, or intended to defraud, that firm. Mere naked declarations of Sampson, in regard to his circumstances, unaccompanied by any act of his, alone, were sought to be proved. If proof of such declarations would tend to prove any thing in this case, it must be, that Sampson made similar declarations to the plaintiffs. But it would have no such tendency. It may not have been necessary for him to say any thing as to his circumstances, to effect his purchases of the plaintiffs; if any representations relating to them were made, they may have been of an entirely different character. There would be no safety in concluding from what he said to one firm, that he said the same things to another firm. If such evidence was admissible, on the trial of an indictment for false pretenses in purchasing goods, the pretenses might be proved by showing that on the purchase of goods of another person, about the same time, such pretenses were made.

It is supposed by the counsel for the plaintiffs, that the evidence was admissible on the principle upon which, on questions of fraud in the sale or purchase of property, similar transactions of the alleged fraudulent party with other persons, about the same time of the transaction in question, may be proved. (*Cowen & Hill's Notes*, 452, 3; 465 *and cases cited. Allison* v. *Mathieu*, 3 *John.* 234. *Benham* v. *Cary*, 11 *Wend.* 83. *Cary* v. *Hotailing*, 1 *Hill*, 311.) But there the object is to prove the *quo animo*—the fraudulent intent in the act in question; and other contemporaneous transactions may be pertinent, and materially aid in ascertaining the motive of that which is the subject of inquiry. In *Cary* v. *Hotailing*, Cowen, J., says, "on questions of intent to defraud, other acts similar to the offense charged, done at or about the same time, or when the same motive to offend may reasonably be supposed to have existed as that which is in issue, are admissible with a view to

the *quo animo.*" In this case the object of the evidence is to prove specific declarations. The difference between the cases is obvious.

The evidence as to the representations made by Sampson, under which the goods were purchased, is conflicting; it presented a fair question for the decision of the referee; and it is a most salutary rule, that the decision of a referee upon a question of fact, especially of fraud, where there is evidence on both sides, and the point is not entirely free from doubt, cannot be disturbed.

This disposes of all the questions raised on the argument, and the judgment must be affirmed.

[MONROE GENERAL TERM, March 2, 1857. *T. R. Strong, Welles* and *Smith,* Justices.]