STARR BROS. V. STEVENSON & LEONARD, Appellants.

RUSH & SPRAGUE V. STEVENSON & LEONARD, Appellants.

**Fraud in Purchase: Rescission.** A charge that a rescission of a sale is warranted if the buyer intended to defraud the seller when the goods were ordered *or when they arrived,* is erroneous. The fraud designated must exist at or before the purchase.

**Same.** The seller should not be required to prove fraudulent représentation *and* concealment of insolvency. Insolvency is simply evidence on the main question—fraudulent intent.

**Same Evidence.** A buyer from a fraudulent vendee has the burden of showing that he bought without knowledge of the fraud or notice of facts which would have put an ordinarily prudent man on such inquiry as would reveal the fraud; though the seller pleads that defendant knew of the fraud, and the latter denies the allegation in his answer.

**Buyer for Value.** Payment with antecedent debt, does not constitute.

**Other Frauds.** Where vendee, without taking them from the carrier that brought them to him, reships goods to another person, evidence of similar frauds is admissible.

**Opinion as to Intent.** WHEN ADMISSIBLE. The seller may, after testifying that the buyer claimed to be buying for one purpose and showing that the purchased goods were used for an entirely different one, give his opinion as to defendant's intent in buying.

**Assessor.** On the question whether the buyer from a fraudulent vendee had means to buy, the assessor at the buyer's residence may say that the buyer had but little property there for two years before the purchase.

**Practice.** Where fraudulent representations are admitted under a general allegation of fraud, the impropriety of such admission can not be first raised by an exception to an instruction.

*Appeal from Dallas District Court.*—HON. A. W. WILKINSON, Judge.

MONDAY, OCTOBER 8, 1894.

SEPARATE actions by appellees, Starr Bros. and Rush & Sprague, to recover a quantity of flour which

they had sold to one L. G. Hetsel, and by him sold to one George Leonard, and by Leonard sold to appellants. They alleged that no title to the flour passed to Hetsel, for the reason that his pretended purchase was in fraud of the right of appellees; that at the time of the purchase he was insolvent, which he well knew, and that he did not intend to pay for the goods, but, on the contrary, intended to cheat and defraud appellees out of their property, and place it beyond their reach; that appellants had knowledge of these facts, and of the fraudulent designs of Hetsel, and assisted and participated in the scheme; and that they paid no consideration for the flour. Appellants' answer was, practically, a general denial of each and every allegation in the petition, and they further alleged that they purchased the flour from one George Leonard prior to the commencement of this suit. The actions were consolidated, and tried to a jury. There was a verdict and judgment for plaintiffs, and the defendants appeal. *Reversed.*

*Cardell & Nichols* for appellants.

*Shortley & Harpel* for appellees.

DEEMER, J.—For some time prior to the twenty-fourth day of August, 1892, one L. G. Hetsel was engaged in the grocery business in the city of Omaha, Neb. In the early part of that year he ordered of Starr Bros., who were engaged in the milling business at Brock, Neb., through a member of the firm, one thousand sacks of flour, four hundred of which were to be shipped immediately, and if these gave satisfaction, the remainder were to follow in two weeks. The four hundred sacks were sent to Hetsel on August 5. Instead of taking possession of this shipment at Omaha, for which trade he had purchased the flour, he, on the tenth day of August, reconsigned the same to one

George Leonard, at Perry, Iowa. Rush & Sprague
were, during the year 1892, also engaged in the milling
business at Leavenworth, Kan., and about the first of
August they shipped to Hetsel, at Omaha, Neb., upon
his order, six hundred sacks of flour. This flour was
also reconsigned by Hetsel on August 10, 1892, to
George Leonard at Perry, Iowa, and Leonard after-
ward made sale of the flour to the defendants and
appellants, who also reside at Perry, in this state. At
and about the time of the sale of the flour, Hetsel was
indebted in the sum of about sixteen thousand dollars,
and on the twenty-third day of August, 1892, he failed,
and conveyed his grocery stock to one P. C. Rude.
Rude, on the twenty-fourth day of August, gave a bill
of sale thereof to Frank J. Hetsel, a brother of L. G.
On the thirteenth day of August, 1892, George Leonard
sold the flour which had been reconsigned to him to
the defendants Stevenson & Leonard, the considera-
for which, it is claimed, was the sum of fifty dollars
cash and two notes for one thousand, five hundred
dollars. These notes have not been paid. Leonard,
of the firm of Stevenson & Leonard, was a nephew of
George Leonard, to whom the flour was consigned by
L. G. Hetsel. George Leonard is a farmer living
twelve miles south of Perry, and knew nothing of the
shipment of the flour to him by Hetsel until he was
notified of it by letter from Hetsel on the eleventh day
of August. He immediately went to Omaha, where
Hetsel was residing, and there it was arranged that he
should take the flour in payment and satisfaction of a
note of one thousand, five hundred dollars which Het-
sel had made him, for borrowed money, in March,
1892. Leonard took the flour pursuant to this arrange-
ment, and transferred it to Stevenson & Leonard, as
before stated. In order to show the financial ability
of Rude, the purchaser of the Omaha store, plaintiffs
offered in evidence the assessment roll of the town of
Perry for the year 1892. To this defendants objected,

as irrelevant and immaterial. There does not appear to have been any ruling on this objection, and, if the book was admitted, over the objection, there was no exception preserved. The assessor who made the book was a witness, and he testified that Rude had but little property in the years 1889 and 1891. This testimony was objected to, but the court admitted it over the objection. The ruling was correct.

It is claimed that the transfer of the property by Hetsel to Leonard before it was unloaded from the cars in Omaha was made with intent to defraud. Where such intent is in question, it is competent to show similar fraudulent acts committed at or about the same time upon others. *Castle v. Ballard*, 23 How. 172; *Baldwin v. Short*, 26 N. E. Rep. (N. Y.) 928; *Allison v. Matthieu*, 3 Johns. 234. The testimony admitted by the court had a tendency to establish that other goods purchased by Hetsel were fraudulently disposed of to Rude.

II. Witness Starr was permitted to testify to his belief as to the purposes for which Hetsel had purchased the flour. This was after he had stated that Hetsel represented to him, when he purchased the goods, that he wanted to retail them from his store in Omaha. Objection was taken to this testimony, and the objection was properly overruled. There are other rulings on the admission and rejection of testimony complained of, which we have examined, and we have to say that we think they were right. None of them are of enough importance to be set out in this opinion, and we will not further refer to them.

III. The court instructed the jury, in the eleventh paragraph of the charge, as follows, to wit: "If you find from the evidence that L. G. Hetsel, at the time he ordered the car load of flour from Starr Bros., or at the time the same arrived in Omaha and was reconsigned for shipment to Perry, Iowa, did

STARR BROS. v. STEVENSON & LEONARD. [91 Iowa

not intend to pay for said flour, but intended to defraud the said Starr Bros. out of the price thereof, then the title to said property did not pass to said L. G. Hetsel, and the purchase would be fraudulent as between said L. G. Hetsel and the said Starr Bros.; and said Starr Bros. would be entitled to recover the said property in this action, unless you find that either Geo. Leonard or Stevenson & Leonard are innocent purchasers for value, as in these instructions defined." The twelfth instruction announces a similar rule as to the purchase from Rush & Sprague. We do not think this instruction can be sustained. It is the *preconceived* design of the buyer, formed at or before the purchase, not to pay for the thing bought, that constitutes the fraudulent concealment which renders the sale voidable, and not an intent formed after the purchase. 2 Pom. Eq., section 906. If the purchaser forms the intent not to pay for the goods after he has received them and the title has passed, it is a mere intended breach of contract, and not such a fraud as to authorize a rescission of the sale. But if he, at the time of making the contract, intends never to pay for the goods, the whole transaction is fictitious. There is no meeting of the minds, no contract. The buyer obtains possession of the goods under the false pretense of a purchase, with intent not to pay for them. On the other hand, an intent formed after the delivery of the goods, and after the title has passed, not to pay for them, is not a misrepresentation, but a mere intention unaccompanied by any act. Fraud never consists in intention, unless it be accompanied by some act. This intent never to pay for the goods has sometimes been treated as a false representation and sometimes as a fraudulent concealment, but, in either event, it must precede the sale. *Burrill v. Stevens*, 73 Me. 395, 40 Am. Rep. 365–368, and cases cited. The distinction is between an intent not to pay accord-

ing to the terms of the contract and an intent to obtain goods under color of a formal sale, upon a sham promise to pay, but with the design of never paying for them. The former is a mere intent to break a contract; the latter, an intent to defraud. *Bidault v. Wales*, 20 Mo. 546. There are cases which hold that, if the contract is void under the statute of frauds, an intent not to pay, existing at the time of the delivery of the goods, is sufficient to vitiate the sale, for the acceptance is part of the contract. *Pike v. Wieting*, 49 Barb. 314. But such a doctrine has no application in this state. Our statute of frauds provides, not that the contract is void, nor that no action shall be brought, but that no evidence shall be introduced if the contract is not in writing; and a delivery of the goods in this case to the carrier was a delivery to the consignee, and operated to transfer the title. A contrary doctrine to that here declared seems to be announced in *Whittin v. Fitzwater*, 29 N. E. Rep. (N. Y.) 298; but the point is ruled upon concession of counsel, and without discussion. We do not think the case announces a correct rule, and must decline to follow it. It is insisted, however, that an intent on the part of the buyer, not to pay for the goods, formed after a delivery to the carrier, and before the actual receipt thereof, is sufficient, especially where the buyer is insolvent, to justify a rescission of the contract, on the theory that in such cases the seller has the right of stoppage *in transitu*.

Let it be conceded that such an intent, coupled with insolvency, would give to the seller the right to stop the goods before delivery, yet such a doctrine has no application to the issues here presented. The right of stoppage *in transitu* must be exercised before the delivery of the goods to the consignee. It is lost after the goods have passed into the actual or constructive possession of the buyer, and can not be exercised by action of replevin against the consignee, or a purchaser.

from him. Again, this right is based upon the contract of sale, and does not, in its exercise, rescind the agreement. "It is nothing more than an extension of the right of lien" which, by the common law, the vendor has upon the goods for the price, originally allowed in equity, and subsequently adopted as a rule of law. *Rowley v. Bigelow*, 12 Pick. 307; *Diem v. Koblitz* 29 N. E. Rep. (Ohio) 1124. In the case at bar, the goods were, in contemplation of law, delivered to Hetsel, and by him to Leonard, and by Leonard to Stevenson & Leonard, days before this action was commenced, and the right of stoppage *in transitu* was lost to plaintiffs, even if it had existed. Such a right did not of itself authorize the rescission of the contract, and give plaintiffs a right to recover, under the allegations of their petition. It is also contended that "where a sale is upon credit it is one of the implied obligations of the contract that the vendee shall keep his credit good; his promising to pay at a future date involving an engagement on his part that he will remain and then be able to pay, which engagement is broken when he becomes insolvent and unable to pay; hence, the right of the vendor to then stop the performance of the contract on his part." This is a correct statement of a rule of law, but it is not applicable to this case. If the buyer does not keep his credit good, it is a mere breach of contract, for which appropriate action may be taken. It does not affect the validity of the original contract of sale, or render it voidable in the sense in which a contract of sale is voidable under the allegations of the petition in this case.

IV. The court directed the jury, in the seventh instruction, as follows: "To entitle the plaintiffs in this case to rescind the sale of goods in controversy, and recover the same back, it is not necessary that the jury should find that the sale was induced by fraudulent representations, but it is sufficient to entitle said plain-

tiffs to rescind said sale if the jury find either that the sale was induced by such fraudulent representations, and that said L. G. Hetsel was at the time insolvent, and that he concealed the fact of his insolvency from the plaintiffs, or that at the time he purchased said goods he did not intend to pay for same; and in determining such fraudulent intent it is not essential that you should find that it has been proven by direct and positive proof, but such intent may be inferred by the proof of such facts and circumstances as shall reasonably satisfy you of such fraudulent intent and design on the part of said L. G. Hetsel.'' This paragraph is erroneous, as were the fifth and sixth, in that they all require the plaintiffs to prove, in addition to false and fraudulent representations made by Hetsel, his insolvency, and concealment thereof from the plaintiffs. The fact of the insolvency of the buyer is not controlling, whether the contract is sought to be rescinded because of fraudulent representations, or because of an intent never to pay for the goods. It is an evidentiary fact, bearing more or less remotely upon the main question. An insolvent may buy goods, fully intending to pay for them, although the fact of his insolvency would tend strongly to show he did not intend to pay. Again, a sale made to a person who is perfectly solvent and responsible may be avoided because of fraudulent representations inducing the contract. The instructions were wrong, but without prejudice to appellants, because they simply cast an additional burden upon the appellees.

It is said, however, that there was no issue of fraudulent representations made by the pleadings, and that if there was an issue, there was no evidence to support it. There was a general allegation in the petition that Hetsel had no right or title to or in the flour, for the reason that the pretended purchase from plaintiffs was made by Hetsel in fraud

of the rights of plaintiffs. Under this allegation, testimony was adduced by plaintiffs, without objection, as to representations made to them by Hetsel at and prior to the time of the sale. Objection was first taken by an exception to the instruction. This we regard as too late. *Collins v. Collins*, 46 Iowa, 61. There was sufficient evidence of fraudulent representations to justify a proper instruction on this theory of the case.

V. In the thirteenth instruction the jury were told that the burden was upon the appellants to show that they purchased the flour from George Leonard in good faith, for value, and without notice of the fraudulent character of the sales by Starr Bros. and Rush & Sprague, to Hetsel. This instruction was correct. *Easter v. Allen*, 90 Mass. 7; *Sillyman v. King*, 36 Iowa, 207; Benj. Sales [6 Ed.], note top page 446. The allegation in the petition that the appellants had notice of the fraud in the sale, and assisted and participated therein, denied by the answer, does not change the rule. *Lane v. Krekle*, 22 Iowa, 407.

VI. The jury were further instructed, in the fifteenth paragraph, that, "if the appellants had notice or knowledge of such facts as would have put an ordinarily prudent man upon inquiry which would have led to a knowledge of the fraudulent purchase, then the plaintiff would be entitled to recover." This instruction, taken in connection with the others and with the conceded facts in the case, was not erroneous. George Leonard, as will hereafter appear, was not a good-faith purchaser, and appellants could not claim a perfect title through him because of his want of knowledge of the character of the original transaction. Stevenson & Leonard were purchasers of the goods, under plaintiffs' theory of the case, from a fraudulent grantee; and, as such, they will be treated as having notice of the fraud, if they had notice of such facts as would put an ordinarily prudent man

upon inquiry, which would have led to a knowledge of the character of the original purchase. *Schulein v. Hainer*, 29 Pac. Rep. (Kan.) 171; Tiedeman on Sales, section 329.

VII.   Finally, it is insisted the court erred in its sixteenth instruction to the jury, which, in substance, was that if George Leonard took the flour from Hetsel in settlement of an antecedent debt he was not a purchaser for value.   This rule is sustained by the great weight of authority, and was recently approved by this court in the case of *Reed v. Brown*, 89 Iowa, 454, 56 N. W. Rep. 663.   See, also, *Schulein v. Hainer, supra*.

For the error pointed out in the eleventh instruction the judgment must be REVERSED.