FRED HETCH, Appellant, v. ALBERT EHERKE, *et al.*

**Fraudulent Conveyance.** A deficiency judgment was obtained against a husband and wife. The husband then owned nothing but an equity in chattel property worth about four hundred dollars. The property was transferred to a son who assumed the mortgages and agreed to support the parents. Through mesne conveyances this property reached another son who assumed said obligation to support. This son bought land on contract. When contract was made the mother insisted that she be named in the contract as a joint owner in order to have security for the obligation to support, and this was done. The judgment plaintiff knew twelve years before bringing action to subject this land that the personal property had been conveyed to a son. He held the mortgage on that property and was paid by the son. *Held,* the land should not be subjected to said deficiency judgment.

ASSESSMENT BOOKS are not competent to prove title to the property assessed even when there is some evidence that an alleged fraudulent holder had it assessed as the property of the alleged owner.

*Appeal from Crawford District Court.*—HON. C. D. GOLD-SMITH, Judge.

THURSDAY, OCTOBER 17, 1895.

Action in equity to subject real estate to the payment of a judgment. There was a hearing on the merits, and a decree in favor of the defendants. The plaintiff appeals.—*Affirmed.*

*T. J. Garrison* and *J. P. Conner* for appellant.

*R. Shaw Van* and *E. R. Duffie* for appellee.

Robinson, J.—The defendants are Albert Eherke, and Rosanna, his wife, and Jacob Eherke, their son. In February, 1879, the circuit court of Cedar county

rendered a decree in a foreclosure proceeding against the defendants Albert and Rosanna Eherke in favor of the plaintiff for the recovery of a specified sum of money, and for the sale of the premises mortgaged to secure its payment. After exhausting the mortgaged property, there remained due on the decree more than six hundred dollars. A few years later the defendants removed from Cedar to Crawford county, and in the year 1887 the mother and son entered into an agreement in writing for the purchase of a quarter section of land in the county last named. In May, 1888, a deed for the land was delivered to them, and they gave in return a mortgage to secure the unpaid portion of the purchase price. The apparent effect of this deed was to vest in each grantee the title to an undivided half of the land, subject to the mortgage. All the payments secured by the mortgage have been made excepting one of less than five hundred dollars. In February, 1892, an execution was issued on the decree, and sent to the sheriff of Crawford county, who levied it upon the interest of Albert and Rosanna Eherke in the land which had been purchased as stated, and a transcript of the decree was filed in that county. This action was brought to subject the property to the levy thus made, and for general equitable relief. The plaintiff claims that the land was paid for by the father and mother, and that it is really owned by them, and that the title to an undivided one-half thereof was taken in the name of the son for the purpose of hindering, delaying, and defrauding the creditors of the father; that the father is insolvent; that the portion of the land which appears to belong to the mother is not sufficient to satisfy the execution, and that she has no other property from which it may be satisfied. The defendants deny that either Albert or Rosanna Eherke has any interest in the land subject to execution, and claim that the legal title to an undivided one-half of the land was vested in Rosanna

Eherke only to secure the performance by Jacob Eherke of an agreement he had made to support her and her husband during their natural lives. The defendants also aver that the plaintiff's right of action is barred by the statute of limitations. Although there is much conflict in the evidence, we are of the opinion that a preponderance of it fairly establishes the following facts:

The foreclosure proceedings in Cedar county resulted in taking from the father and mother all of their property, excepting some personal property owned by the father, consisting of stock and farm implements, nearly all of which was mortgaged. That property was turned over to John Dettman, a son of Rosanna Eherke, and a stepson of Albert Eherke, under a verbal agreement, by which he took the property, and obligated himself to pay the incumbrances thereon, and to support his mother and stepfather so long as they should live. That agreement was carried out for two years. Then John Dettman married, and left the farm where he and his parents had been living, and sold the property, and perhaps some additions to it, to his brother Chris Dettman, and his half-brother, the defendant Jacob Eherke. They paid five hundred dollars for the property, and assumed the obligation of John Dettman to support their parents. About the year 1883, Jacob and Chris rented the land in controversy. After a time Chris transferred his interest in the property to his half-brother Charles Eherke, who assumed the obligation to support his parents, and after a year Charles transferred his interest to Jacob, who has owned the property, and been under obligation to wholly support his parents since that time. He paid the rent of the farm until it was purchased, and has furnished all the money which has been used in paying the purchase price. Since their Cedar county farm was lost, and their personal property was transferred to John Dettman in the year 1879, Albert and Rosanna Eherke

have not had any property. They have lived with the
sons, who have assumed liability for their support, and
the mother has always kept house for them, but the
father has not been able to see much for several years,
and has not been able to do much work. Since the
year 1879 they have been supported by their sons, and
since Jacob has assumed the sole obligation for their
support he has supplied what they have required.
When the contract for the purchase of the land was
made, the mother insisted on some arrangement which
would secure to her a home, and proposed that the con-
veyance should be made in part to her. Jacob objected
at first, but finally yielded, and the mother's name was
inserted in the contract, and afterward in the deed, as
one of the purchasers. The appellant denies that the
facts stated are shown by a preponderance of the evi-
dence, and there is much which tends to support the
denial. The fact that the conveyance under which
Mrs. Eherke holds appears to vest in her an absolute
and unqualified title to an undivided one-half of the land
is entitled to great weight. Assessors' books
and transcripts therefrom were offered to show
that live stock was assessed to Mrs. Eherke in
Cedar county for the years 1882 and 1883, and that she
was assessed in Crawford county for similar property
in the years 1884 to 1888, inclusive, and that in the years
1889 to 1891, inclusive, property of that kind was
assessed to her and Jacob as joint owners. It is also
shown that John Dettman was assessor for some of
these years, and that Jacob Eherke gave the informa-
tion on which the assessment of 1885 was based. The
money with which some of the payments for rent were
made before the land was purchased was produced by
Mrs. Eherke. Witnesses also testify that when the
land was purchased she said she would purchase one
eighty and Jacob the other, but the owner would not
divide the land, and both signed the contract. There

is also testimony to the effect that when the execution in question was levied Mrs. Eherke and Jacob were present, and stated that she owned one eighty and Jacob the other.   There is testimony which tends to show that in the year 1884 Mrs. Eherke had seven hundred dollars in notes secured by a chattel mortgage.   The giving of those notes is explained, and the notes shown to be worthless.   Some of the testimony for the plaintiff in regard to what was said and done at the time the land was purchased and when the assessments were made is contradicted by witnesses for the defendants.   The defendants objected to the introduction of the assessors' books in evidence and insist upon their objection here.   It was decided in *Adams v. Hickox,* 55 Iowa, 632 (8 N. W. Rep. 485), that such books are not competent to prove the ownership of the property assessed, and the admission of the parties in interest in regard to the ownership of the property at the time of the several assessments show but little in regard to it, and are not entitled to much weight.   In *Starr v. Stevenson,* 91 Iowa, 684, (60 N. W. Rep. 217), it appears that an assessor's book was introduced in evidence over the objection of the defendant, but that no exception to the ruling was preserved.   The assessor who made the book was permitted to testify, but apparently from his own knowledge.

Although the real facts in this case are not established beyond controversy, yet the evidence shows quite satisfactorily that Mrs. Eherke holds the title to an undivided one-half of the land in question only to secure the performance by Jacob of his agreement to support her and her husband during in their lifetime; that neither she nor her husband contributed anything to the purchase price of the land,

excepting as it may have been done by a transfer of personal property to John Dettman in the year 1879, and by subsequent transfers of the same property. It is uncertain what the property transferred to Dettman was worth when he received it. He paid the incumbrances thereon to the amount of nearly seven hundred dollars, and two years later, when he transferred it, probably with some additions, the value of what was so transferred was from one thousand one hundred dollars to one thousand two hundred dollars. No evidence has been offered to show that the proceeds of any of it were used in purchasing the land in question. It appears, therefore, that we have a case where the evidence clearly shows that the title to an interest in the land sought to be subjected to the execution is held by one of the judgment defendants as security only, and that she has contributed nothing toward the purchase of the title thus held. Whatever doubt there may be in regard to other questions in the case, these facts are sufficiently established, even under the rule of *Langer v. Meservey,* 80 Iowa, 158 (45 N. W. Rep. 732), and other cases cited by the appellant that the proof to show that a deed absolute in terms is to be treated as a mortgage must be clear and satisfactory. It may be that some of the personal property transferred by Albert Eherke to John Dettman, or its proceeds, was used in paying for the land; but, as we have seen, if that be true, it has not been shown. Moreover, Albert Eherke, the judgment debtor, who owned the property, parted with his interest in it more than twelve years before this action was commenced; transferred the possession of it at that time to his stepson, and since then has had no interest in the property. The plaintiff held a mortgage on the property when it was transferred, and received payment of the amount due thereon from the stepson. He acquired title to the farm under

his decree of foreclosure, and then had litigation with the stepson in regard to the possession of it. He must be held to have had knowledge of the transfer of the personal property at about the time it was made; and the financial condition and the relationship of the parties interested in it, of which he had knowledge, were such that he must be charged with notice of the transaction. Inquiries, which the matters which he knew must have suggested, would have led to a discovery of the facts which he now claims constituted a fraud as against himself. See *Mickle v. Walraven* 92 Iowa, 423 (60 N. W. Rep. 633); *Hawley v. Page*, 77 Iowa, 240 (42 N. W. Rep. 193); *Humphreys v. Mattoon*, 43 Iowa, 556; *District Tp. v. French*, 40 Iowa, 601. We conclude that the plaintiff has failed to show himself entitled to any relief, and the decree of the district court is therefore *affirmed.*