J. J. THEUSEN, Appellee, v. W. R. BRYAN, Defendant, JOHN R. STEWART, PETER D. MOELER, JAMES PORTER AND REINBECK STATE BANK, Appellants.

Fraudulent Purchase: ACTIONABLE FRAUD OF THIRD PERSON: *What is not.* A partnership, without interest in his business, permitted a buyer of live stock to make his shipments in its name. Drafts in favor of the firm, drawn against such ship-

ments were deposited in a bank at Reinbeck to the credit of the buyer. The buyer issued his own checks in payment of what he bought. This bank paid such checks, charged them to the buyer's account and then sent them to said firm. The buyer also issued checks upon a bank at Hudson and it paid these on the promise of one member of said firm that it would save this bank from loss. The Hudson bank forwarded the paid checks to the Reinbeck bank, which charged them to the account of the buyer and remitted to the Hudson bank. Plaintiff and his assignor sold stock to the buyer, receiving, in payment, checks upon the Hudson bank. Before it received these checks the said firm and the Reinbeck bank notified it to refuse payment, which was done. Part of the stock bought was shipped to a commission firm in Chicago in the name of said partnership. It applied the proceeds to a debt due from the partnership on prior deals. For the rest of the stock bought the buyer made a bill of sale to the Reinbeck bank to pay his own debt. This stock was sold· in the name of said partnership and the proceeds applied on the buyer's debt to said bank. *Held*, fraud being the only issue, and the buyer having purchased with intent to pay, the seller could not recover of said partnership the value of what was sold, though the firm stopped payment of said checks with intent to cheat the sellers, with the knowledge that they had not been paid. What the firm did was no more than a breach of contract and its intent to gain an advantage by stopping payment does not constitute a fraud.

CHARGE AND PLEA. The question of liability had the partnership directed the buyer to purchase with intent to defraud the seller should not have been submitted, because not made in the pleadings.

INSTRUCTIONS AND EVIDENCE. An instruction that if A. directed B. to purchase goods with intent to cheat, and thereafter received the proceeds, and if B. "bought the goods because of this direction, and would not have bought them" but for this direction, then the jury might find fraud, etc., is erroneous, where there was no evidence that B. would not have bought the goods but for this direction, or that he acted thereon in buying them.

Election of Remedies: SUIT ON CONTRACT AND RESCISSION. Where plaintiff sued to recover the price of goods, claiming there was a valid contract for the sale, and that defendants guaranteed to pay the buyer's checks therefor, this was an election of remedies, estopping plaintiff to claim that a subsequent action to recover of defendants for fraud in the purchase was a rescission of the contract.

*Appeal from Grundy District Court.—*HON. F. C. PLATT,
Judge.

FRIDAY, APRIL 12, 1901.

ACTION to recover the value of certain live stock sold
and delivered by plaintiff and one Moag to defendant W. R.
Bryan. There was a trial to a jury, resulting in a verdict
and judgment for plaintiff against defendants Stewart,
Moeler, and Porter, and they appeal.—*Reversed.*

*R. J. Williamson* and *Boies & Boies* for appellants.

*Mullan & Pickett, J. C. Scott, H. C. Hemenway,* and
*A. Grundy* for appellee.

DEEMER, J.—Prior to the transactions complained of
in this case, defendant Bryan and one Morrison were en-
gaged in the business of buying and shipping live stock un-
der the firm name of Bryan & Morrison. This firm had con-
tracted a large indebtedness to Ingwerson & Smith, commis-
sion men in the city of Chicago, and at the time of the disso-
lution of the firm was practically insolvent. Bryan, how-
ever, desired to continue in business, and, in order to avoid
trouble on account of his indebtedness to the Chicago com-
mission house, made his shipments of stock in the name of
Stewart, Moeler & Co., a co-partnership doing a lumber, coal,
and grain business in the town of Reinbeck. Drafts in favor
of this firm were drawn against shipments of stock bought by
Bryan, but the drafts were deposited in the Reinbeck
bank to the credit of Bryan. Bryan commenced us-
ing the name of Stewart, Moeler & Co. without their
consent, but they afterwards ratified the same, and must be
held bound thereby. This firm had no interest in Bryan's
business. They simply acted as his bankers. When Bryan
purchased live stock he issued checks in his own name in pay-
ment therefor. The bank paid the checks, and after charging
the amount to Bryan's account, sent them to Stetwart, Moeler

& Co.   Bryan also purchased live stock in the vicinity of
Hudson, at which place the firm of Stewart, Moeler & Co.
also did business, and they both issued checks on the Hudson
Savings Bank.   This bank paid both kinds of checks on the
promise of one of the members of the firm of Stewart, Moeler
& Co. that they would reimburse the bank for any loss it
might sustain in the payment of the checks.   The Hudson
bank forwarded all these checks paid by it to the bank at
Reinbeck, and the Bryan checks were charged to Bryan's
account, and the amount thereof remitted to the Hudson
bank, from time to time, as they were presented.   Plaintiff
and his assignor, Moag, sold stock, the value of which they
seek to recover in this action, to Bryan, and received his
checks on the Hudson bank in payment thereof.   The prop-
erty was delivered and the checks were issued during bank-
ing hours on the 15th day of January, 1895.   Instead of pre-
senting their checks for payment to the Hudson bank, plain-
tiff and Moag on the sixteenth day of January, 1895, depos-
ited them with a bank at Cedar Falls for collection, and on
the same day this bank forwarded them to the Hudson bank
for payment.   In the meantime, and on the morning of the
sixteenth day of January, and before the receipt of the checks
by the Hudson bank, the Reinbeck bank and Stewart, Moeler
& Co. notified the Hudson bank to refuse payment of all Bry-
an's checks.   The hogs purchased from plaintiff, Theusen,
were placed with other hogs in the yards at Hudson; and the
cattle purchased from Moag, plaintiff's assignor, were
shipped to Chicago in the name of Stewart, Moeler & Co., to
Ingwerson Bros. & Smith. At that time the indebtedness due
this commission firm on account of prior deals in the name of
Stewart, Moeler & Co. was something over $1,500, and the
proceeds of the cattle so shipped were applied on this in-
debtedness.   Bryan was also indebted at this time to the
Reinbeck bank, and on the sixteenth day of January, 1895,
made a bill of sale to the bank covering the hogs purchased
of plaintiff and other property, to secure the indebtedness.

These hogs were thereupon shipped in the name of Stewart, Moeler & Co., on a contract of sale theretofore made by Bryan to a concern in Marshalltown, Iowa, and the proceeds were remitted to Stewart, Moeler & Co., and the amount placed to the credit of Bryan on his account with the bank. The action is to recover the value of the hogs and cattle sold, from each and all of the defendants. Plaintiff voluntarily dismissed the action as to Bryan, and at the trial the jury was instructed to find a verdict for defendant the Reinbeck bank.

The petition charges a contract liability for the stock on defendants Stewart, Moeler & Co., and also seeks to recover the value thereof from said firm because of fraud. The contract liability is bottomed on the alleged promise of said defendants to guaranty or pay the checks drawn by Bryan on the Hudson bank, and the claim for torts on allegations that, with intent to defraud plaintiff and Moag, defendants Stewart, Moeler & Co. gave notice to the Hudson bank not to pay Bryan's check; that when they gave this notice they knew the live stock purchased by Bryan had not been paid for, and that at that time they had obtained from Bryan a bill of sale covering all his property to secure the amount due the bank, and that at said time the stock had been shipped in the name of Stewart, Moeler & Co., as before indicated; that, with full knowledge of the dishonor of Bryan's checks for the stock, Stewart, Moeler & Co. appropriated the proceeds of the stock for which payment had not been made to their own use and benefit, and that all defendants except Bryan repudiated responsibility for the checks issued in payment for the stock, and conspired and confederated together to cheat and defraud the plaintiff and his assignor by applying the proceeds of said stock on an indebtedness of Bryan's knowing that the stock had not been paid for, and in violation of their agreement to honor the checks and furnish Bryan money with which to meet the checks issued by him. The issue of fraud was the only one

submitted by the court. The chief evidence of the alleged fraud consists of a certain declaration said to have been made by Stewart, after the transaction complained of occurred, to the effect that his firm had concluded to close up the business, and had so informed Bryan; that Bryan said he had a part of a car load of cattle purchased from Moag, and had spoken to Theusen about his hogs, and that he (Bryan) was advised by Stewart to go and buy the stock, make shipment, and close up the business, and that he knew the cattle were not paid for when he gave Bryan the advice. In the further discussion of the case, it must be borne in mind that Bryan purchased the stock from plaintiff and his assignor, giving his checks therefor on the Hudson bank; that he (Bryan) made no misrepresentation at the time of the sale; and that, so far as shown, there was no intent on the part of Bryan not to pay for the stock at the time he purchased. It should also be remembered that Stewart, Moeler & Co. were bankers for Bryan, and not principals in the transaction, and that the case was submitted solely on the issue of fraud. Bearing on that issue, the court gave the following, among other, instructions, to-wit: "That the plaintiff might recover" in the event the jury found: "Second. That the defendants Stewart, Moeler & Co. stopped the payment of the checks given by Bryan to plaintiff and Moag in payment for the live stock in question with intent to cheat and defraud the former owners thereof, and to appropriate or convert such stock, or the proceeds thereof, to their own use or benefit, with intent to defraud or cheat the former owners or sellers of said stock." This was manifestly erroneous, for the reason that if Bryan purchased the property in good faith, and with intent to pay therefor, the mere fact that defendants stopped payment of the checks would not constitute fraud. At most, it would be nothing more than a breach of contract. The intent of the defendants to gain an advantage by stopping the payments of the checks did not constitute a fraud. *Starr v. Stevenson,* 91 Iowa, 684; *Van*

*Vechlen v. Smith,* 59 Iowa, 173; *Dorris v. Miller,* 105 Iowa, 569. This same error was repeated in the fifth, and also in the fourteenth, instruction.

In the third instruction given by the court the jury was instructed, in substance, that if Stewart directed Bryan to purchase the stock with intent to cheat and defraud, and thereafter his firm received the proceeds, and if Bryan bought the stock because of this direction, and would not have bought it but for this direction, then it might find fraud, etc. This instruction was erroneous, because there was no evidence to show that Bryan would not have bought the stock but for this direction, and no evidence that he acted thereon in purchasing the property.

II. Neither plaintiff nor his assigner sold his stock by reason of any misrepresentations made to him by the defendant Bryan, unless it be that at the time he purchased he (Bryan) did not intend to pay for the goods. No such intent is charged in the petition, however, and the case was not tried on that theory. Stewart, Moeler & Co. were not principals in the transaction, and neither plaintiff nor his assignor sold the goods relying on them for their pay. There has been no rescission of the contract as to Bryan, unless the bringing of this action be a rescission; and this cannot be true, for it appears that prior to the bringing of this suit plaintiff commenced an action to recover the purchase price of the cattle, claiming that there was a valid contract for the sale, and that defendants promised and guaranteed to pay Bryan's checks issued for the purchase price. This was such an election of remedies as estops plaintiff from claiming that this action is a recission. *Elm Creek Elevator Co. v. Union Pac. Ry. Co.,* 97 Iowa, 719; *Klocow v. Patten,* 93 Iowa, 432; *Elliott v. Insurance Co.,* 109 Iowa, 39.

We are asked to decide the question as to whether or not there is any contract liability on the part of the defendants. As the matter is not properly before us, we do not

pronounce thereon.   The record does not call for a decision
of the question, and we leave it until it properly arises.

It is a little difficult to understand the theory on which
plaintiff seeks to recover.   In one part of his petition he
alleges a sale of the live stock to Bryan, and charges that
the fraud on the part of the defendants Stewart,
Moeler & Co. consisted in notifying the Hudson bank
not to pay the checks drawn for the purchase price
thereof, and in taking the bill of sale of the property.   In-
deed, this seems to be the only fraud charged.   If we are
right in our analysis of the petition, it is clear that no ac-
tionable fraud is charged.   The sale, as between plaintiff
and his assignor and Bryan, was valid, and the mere fact
that defendant induced the bank not to pay the checks, or
that they received the proceeds of the cattle bought, would
not constitute a fraud, no matter what their intent.   To in-
duce another to break his contract is not an actionable wrong
unless accompanied by malice, and, even when so accom-
panied, there is much conflict in the cases regarding the
right to recover.

Nothing further need be said on this proposition, and
no reference need be made at this time to the conflicting cases
mentioned.   As we read the petition, Bryan is not charged
with an intent to defraud, and defendants' liability seems
to be predicated on the proposition that they are fraudulent
transferees of the property purchased.   There could not, of
course, be a valid sale to Bryan, and a recovery from his
transferees, because they took title to the property with
fraudulent intent.   Fraud never consists in mere in-
tent.   *Starr v. Stevenson, supra.*   The court charged
the jury, in effect, that if Stewart, or Stewart, Moeler
& Co., directed Bryan to purchase the stock in question with
intent to defraud plaintiff and his assignor, then it would
be justified in finding for plaintiff.   We find no allegation
in the petition to justify such a charge, and, in the absence
of such allegations, the instruction was erroneous.   What

we have said fully indicates our views of the law of the case as presented by the pleadings, and it follows that defendants' motion to direct a verdict for them on the issue of fraud, filed at the conclusion of the evidence, should have been sustained. We do not overlook the case of *Fitzsimmons v. Joslin,* 21 Vt. 129, cited in appellee's brief. Conceding it to announce correct rules of law, they are not applicable to the case made by the pleadings. · For the errors pointed out, the judgment is REVERSED.