JOHN BLAUL & SONS, Appellants v. G. S. WANDEL. WM. ROBY, Intervener.

**Sales:** BREACH OF EXECUTORY CONTRACT: RESCISSION: FRAUD: EVIDENCE. Mere failure to perform an executory agreement, which is part of the consideration or inducement to the making of a contract of sale, will not *per se* constitute such fraud as to authorize the subsequent rescission of the contract by the other party; but a secret intention of the buyer at the time the promise was made not to perform the obligation, if the promise was relied upon as a material inducement to making the sale, will constitute fraud warranting a rescission. In the instant case the buyer's fraudulent purpose not to countermand a previous order for like goods as agreed at the time he made the purchase from plaintiff is not shown, and he is not therefore entitled to rescind and recover the goods.

**Same:** RELIANCE UPON EXECUTORY CONTRACT: BURDEN OF PROOF. Where the seller of goods asserts a right to rescind the sale because of the buyer's failure to cancel an order for like goods from another as agreed, he must prove that his sale was made on the strength of such promise; and if he did not so rely on the promise the buyer's intention in making the same is immaterial.

**Replevin:** MEASURE OF DAMAGES. Where the defendant in a replevin action elects in his answer to treat the alleged wrongful taking as a conversion, and notifies the plaintiff that he will be held for the value of the property wrongfully taken, the plaintiff is under no obligation to hold the property but may dispose of it as his own; and an instruction that if plaintiff wrongfully took possession of the property under the writ defendant would be entitled to its return, or its value at the time of trial, was erroneous; since under the claim made by defendant he was only entitled to its value at the time of taking with interest from that date.

**Same:** INSTRUCTION. The purchaser of a merchantable commodity, not having paid therefore, is only entitled, upon a wrongful rescission of the sale and taking of the property by the seller, to such damages as will cover his expense in replacing the purchase with a like quality and quantity of goods; and the

jury in estimating such damages should not be allowed to take into account the retail price of the goods.

**Sales:** RESCISSION: INSOLVENCY. Insolvency as an element of fraud for which the seller of goods seeks to rescind the sale and recover the property, is not to be determined by the technical rules of the bankruptcy act; but if the debtor's financial situation at the time of the purchase was such as to justify him in the reasonable belief that he could meet his contract, and he entertained such belief, he was not guilty of fraud in making the purchase, although he could have been adjudged a bankrupt.

*Appeal from Van Buren District Court.*— HON. ROBERT SLOAN, Judge.

SATURDAY, FEBRUARY 15, 1908.

ACTION in replevin for the possession of two hundred and twenty-seven bags of flour of a particular description, sold by plaintiffs to defendant in a transaction which plaintiffs sought to rescind on the ground of fraud. An equitable issue, raised by intervener with reference to the reformation of a chattel mortgage under which he claimed the right to the flour, having been determined in his favor, the issues as to plaintiffs' right to rescind were tried to a jury, and, from a judgment against the plaintiffs on a verdict in defendant's favor, the plaintiffs appeal.—*Reversed.*

*W. L. Cooper, John J. Seerley,* and *Robt. R. McBeth,* for appellants.

*Wherry & Walker,* for appellees.

McCLAIN, J.— To a proposition made by defendant to plaintiffs, with reference to the purchase of a small car load of Eaco flour and feed, containing the statement " I have a car bought of the Alton Milling Co., but it ain't giving good satisfaction; if I can buy Eaco I won't let

them ship this load," plaintiffs replied: "We have your favor, and will ship you a car of flour, two hundred and fifty bags of Eaco at $4.00 per barrel, upon the terms and conditions you name;" and a car load of flour and feed was thereupon shipped by plaintiffs to defendant, and received by the latter. Subsequently, when plaintiffs discovered that defendant had, prior to the giving of this order, placed a mortgage on his stock in favor of intervener, which mortgage was recorded after the flour was shipped and accepted by defendant, they instituted this action in replevin, claiming the right to rescind the sale on the ground of fraud, and under the writ seized two hundred and twenty-seven bags of flour. There were various allegations of fraud in the plaintiffs' petition and amendments, but the questions which we deem most important for determination are, first, as to whether the promise to cancel a previous order for flour from the Alton Milling Company, which promise was not performed by the defendant, constituted fraud; and, second, whether the court erred in its instructions to the jury with reference to the measure of damage.

I. It is elementary that the mere failure to perform an executory agreement which is part of the consideration or inducement to the making of a contract of sale will not

1. SALES: breach of executory contract: rescission: fraud: evidence.

*per se* constitute such fraud as to authorize the subsequent rescission of the contract by the other party. *Van Vechten v. Smith,* 59 Iowa, 173; *State Bank of Ind. v. Mentzer,* 125 Iowa, 101; *State Bank of Ind. v. Gates,* 114 Iowa, 323; *Chicago, T. & M. C. R. Co. v. Titterington,* 84 Tex. 218 (19 S. W. 472, 31 Am. St. Rep. 39). Of course, if it can be shown that when the inducing promise was made and a sale consummated in reliance thereon the buyer had a secret intention not to perform the obligation which he undertook to perform in the future, then this secret intention not to perform, in itself, constitutes such fraud as to warrant a rescission if the promise was relied

on by the seller, and was a material inducement to the making of the sale. *Cox Shoe Co. v. Adams,* 105 Iowa, 402; *Swift v. Rounds,* 19 R. I. 527 (35 Atl. 45, 33 L. R. A. 561, 61 Am. St. Rep. 791); *Donaldson v. Farwell,* 93 U. S. 631 (23 L. Ed. 993). But the fraud relied upon must have existed at the time of the sale; it cannot consist in a subsequent failure to perform an executory agreement. *Kearney Mill. & E. Co. v. Union Pac. R. Co.,* 97 Iowa, 719. . The mere failure to perform an executory agreement which is a part of .the consideration of or inducement to the sale is not in itself proof of fraud existing at the time of the sale. *Theusen v. Bryan,* 113 Iowa, 496, 503; *Starr v. Stevensen,* 91 Iowa, 684.

Counsel for appellants insist that the failure of defendant to countermand his order to the Alton Milling Company, resulting in his receiving a car load of flour from that company about the same time that he received the flour shipped to him by appellants, established a fraudulent purpose, and that a verdict should have been directed for the appellants. But this cannot be so in the absence of proof that the defendant entertained the fraudulent purpose not to countermand the order given to the Alton Milling Company at the time of the purchase of the flour from the appellants. The language relied upon, found in *Pollard v. McKenney,* 69 Neb. 742 (96 N. W. 679, 101 N. W. 9), is not applicable here. That was a case in which plaintiff was seeking to establish a constructive trust upon land by reason of a promise alleged to have been fraudulent that the defendant as grantee of the plaintiff would hold the land for plaintiff's benefit, and the court finds constructive fraud to have existed in the intention not to perform the promise at the time it was made. What is further said in the case with reference to a presumption of fraud arising from the failure to comply with such a promise is expressly announced by way of *dictum,* but, whether *dictum* or not, it has no application to this case. That was an equitable action

to enforce a parol trust in land, and in such cases it has perhaps with propriety been said that the grantee taking absolute title with such a parol agreement violates his agreement and trust when he attempts to make other use of the property than that for which he accepted and agreed to hold it.

This is an action at law based on an attempted rescission on account of fraud in the purchase of property sold and delivered to the defendant, and we find no authority supporting the rule of evidence contended for by counsel for appellants — that the failure to perform an executory agreement in itself shows that such agreement was made with the secret intent not to perform it. If the rule contended for by counsel were recognized, then the seller could make out a case for rescission wherever goods have been sold on credit and the buyer has not subsequently paid in accordance with his promise. We have frequently held that while a false representation as to financial standing relied upon by the seller may be sufficient ground for rescission, although the buyer did not know himself to be insolvent, yet in all these cases there was evidence that the representations made by the buyer at the time of the purchase were false and fraudulent, and were relied on by the seller as an inducement to the sale. *Reid v. Cowduray,* 79 Iowa, 169; *Oswego Starch Factory v. Lundrum,* 57 Iowa, 573; *Morris v. Posner,* 111 Iowa, 335; *Starr v. Stevensen,* 91 Iowa, 684.

The issue as to whether appellants relied upon any promise or agreement of defendant to cancel his order to the Alton Milling Company was submitted to the jury, and in answer to a special interrogatory the jury

2. SAME: reliance upon executory contract: burden of proof.

expressly found that appellants did not rely upon any such promise or agreement. If there was any evidence to sustain this finding, then defendant's intention in making such promise was immaterial. Without going over the record in detail it is sufficient to say that there was evidence in the conduct and

statements of appellants and their agent supporting the conclusion of the jury. To sustain a rescission by appellants on account of such false promise it was necessary for appellants to show that the goods would not have been sold to the defendant but for such promise. *Theusen v. Bryan,* 113 Iowa, 496. To say the least the showing for appellants on this issue was not such as to require a different conclusion than that reached by the jury. On the whole we are satisfied that no error was committed with reference to the submission to the jury of the issue whether appellants were entitled to rescind the sale on account of the alleged fraudulent promise herein referred to.

II. The court instructed the jury that if plaintiffs were found to have wrongfully rescinded the sale, and taken the flour under the writ of replevin, the defendant would

3. Replevin: measure of damages.

be entitled to a return of the property taken; but as it was undisputed that plaintiffs had disposed of the flour, and defendant elected to have its value at the time of trial, the jury should determine the fair and reasonable market value at the time of trial, taking into consideration both the wholesale and retail price, in connection with the other evidence bearing thereon. We believe this instruction was erroneous. In defendant's original answer he had alleged the wrongful taking under the writ of replevin, and damages for loss of time in making his defense, and he asked judgment for the value of the flour. Having thus elected to treat the seizure under the writ of replevin as a conversion, and to have damages therefor estimated on the value of the property taken, plaintiffs were at liberty to make such disposition of the property as they saw fit, subject to liability under their bond for the value of the property which they had taken. *Becker v. Staab,* 114 Iowa, 319; *Powers v. Benson,* 120 Iowa, 428. Had defendant put in issue only plaintiffs' right of possession of the property, on recovering a verdict against the plaintiffs, finding that the taking under the writ was un-

lawful, he might no doubt have elected to take judgment
for the value of the property at the time of the trial as
determined by the jury. See Code, section 4178. Under
such circumstances defendant could have had his damages
for the detention of the property, and also the value of
the property as found by the jury, electing to take a money
judgment for that value instead of accepting a return
of the property. In the event of increase in value of
the property during the detention under the writ de-
fendant would be entitled to such increase, it being his
right to have the property returned to him when it was
found that it had been unlawfully taken. If, in the mean-
time, the property had decreased in value the defendant
would be entitled only to the value of the property at
the time of trial, but by way of damages could have com-
pensation for such decrease. *Clement v. Duffy*, 54 Iowa,
632; *Newberry v. Gibson*, 125 Iowa, 575. There is some
confusion in our cases on this subject growing out of
the difficulty of announcing a general rule under one
particular state of facts which can properly be applied
in determining the rights of the parties under other con-
ditions. It is sufficient now to say that, where the defend-
ant elects to treat the alleged wrongful taking in the
beginning as a conversion, and to notify the plaintiff that
he shall be held to answer for the value of the property
wrongfully taken, plaintiff is under no obligation to hold
the property and assume the risk of a deterioration in value,
but may dispose of it as his own, and if he is unsuccessful
in establishing his right to the property, his liability is for
its value when taken. None of our cases are inconsistent
with this conclusion, and the reasoning announced neces-
sarily leads to the result which we have indicated. On this
theory the plaintiffs should have been held liable, however,
for interest on the value of the property from the time of
conversion.

    We think the court also erred in allowing the jury to

take into account the retail price of the flour in determining its value. The flour being a merchantable commodity and

4. SAME:
   instruction.

not having been paid for, defendant could have suffered no damage from the wrongful taking, save the expense of replacing by the purchase of other flour of the same quality in the quantity taken. He was not entitled to have from the plaintiffs the price for which he might have sold the flour in the ordinary course of business at retail. The damages to which the owner of a merchantable commodity is entitled in case of its wrongful conversion is the amount which will make him whole; and not having invested his money in the goods taken, and therefore being in a position to procure other goods of the same quality to replace those taken, he is only entitled to the cost of replacement with interest.

III. In view of the necessity for a reversal on account of erroneous instructions as to the basis of defendant's recovery of damages, we need not consider many other ques-

5. SALES:
   rescission:
   insolvency.

tions argued which are not likely to arise on another trial. We should say, however, with reference to a new trial that, so far as the question of solvency of the defendant at the time of the purchase of the flour may be involved, it is not to be determined by the definition of insolvency found in the federal bankruptcy law, but by the rules which have been announced by this court with reference to such questions. Insolvency seems to be material in this case only in determining whether defendant was guilty of fraud in the purchase of the flour, and if his financial situation at the time of the purchase was such as to justify him in the reasonable belief that he would be able to pay for the flour in accordance with his contract, and he in fact entertained such belief, he was not guilty of fraud in making such purchase, although, under the technical rules of the bankruptcy act, he might have been in such situation that he could have been declared a bankrupt.

For the reasons indicated in the second division of this opinion, the judgment is *reversed.*