## Freeman Sloan v. William H. Holcomb and another.

*Mortgages: Foreclosure; Mortgagor's title.* Complainant conveyed certain lands to defendant's father and took a note and mortgage for a portion of the purchase price; his wife destroyed the mortgage before it had been recorded; defendant's father conveyed the lands to defendant, and afterwards died; complainant filed his bill to foreclose said destroyed mortgage, and thereupon defendant gave his mortgage upon the same lands to complainant in exchange for said note against his father, and afterwards presented the same against his father's estate as a claim in his favor, and had it allowed:

*Held,* That in a suit to foreclose the latter mortgage the complainant is not in a position to question the validity of the conveyance to defendant from his father; having parted with his prior unrecorded lien, he must stand upon the new mortgage received in its stead, and whatever defeats his mortgagor's title defeats also his mortgage lien.

*Mortgages: Destruction of instrument: Lien: Notice.* A purchase price mortgage which was destroyed by the mortgagee's wife before being recorded, is held to have been a valid and subsisting lien upon the lands as between the parties and all others claiming with notice; the destruction of the paper evidence of it did not annihilate the lien.

*Evidence: Release of lien.* One holding such a lien might contract to release the lien and hold only the personal security to which it was collateral; and the existence of such an arrangement may be established by circumstantial evidence, but not by vague and careless expressions or dim and shadowy inferences; the evidence on that point in this case was not sufficient.

*Evidence: Burden of proof.* Where, in defense to a foreclosure suit, it is averred that the mortgage was procured by false representations, the burden of proving such representations is on the defendants.

*False representations: Evidence.* The proofs fail to establish the averments in the answer, that the mortgage in question was procured by representations that the prior mortgage (which had been destroyed) was recorded, or that it was still in existence.

*False representations.* The prior mortgage, though destroyed, constituting a valid and subsisting lien upon the lands, a representation that it was still in existence, made to one who had purchased with notice, would be immaterial.

*Estoppel: Fraud: Election.* Parties who have given a mortgage in exchange for a promissory note against their father, are estopped, after having deliberately presented the note as a claim in their favor against their father's estate and had it allowed, from defending against the foreclosure of such mortgage upon any assertion that the same was procured by means of any false representations the falsity of which was known to them before prosecuting such claim; having treated the note as their own, and thus asserted an election to affirm the original exchange, they were not at liberty when called upon to pay the mortgage, to turn round and assert a right to elect again and in a way to stultify their first election.

*Heard January 9. Decided April 8.*

Appeal in Chancery from Ionia Circuit.

SLOAN *v.* HOLCOMB.

*W. W. Mitchel,* for complainant.

*A. W. Dodge,* for defendants.

GRAVES, CH. J.

On the 6th of February, 1865, the complainant and his wife conveyed to Jesse Holcomb, father of the defendant William, the east half of the south-east quarter of section 6, in township 7 north, of range 6 west, in this state, for the consideration of two thousand dollars, and to secure this purchase money Jesse Holcomb gave to complainant his promissory note, payable to him or bearer in two years, with annual interest, and likewise executed and delivered to him a mortgage on the land to accompany the note.

On receiving the note and mortgage, the complainant left them in the hands of his wife, Mrs. Sloan, and on the day of their date, and before the mortgage had been recorded, she, in consequence of a momentary pique against her husband, burnt up that paper, and the complainant immediately informed Jesse Holcomb of the fact, and conversed with him about a new one.

Subsequently, and on the 20th day of November, 1865, as the complainant, in his answer to the cross-bill hereafter mentioned, admits, Jesse Holcomb conveyed the lands to his son, the defendant William.

On the 22d of February, 1866, Jesse Holcomb paid one thousand dollars on the debt, and afterwards paid the interest up to February 6th, 1869. On the 9th day of May thereafter Jesse Holcomb died, leaving the residue of the debt which arose from the purchase of the land, unpaid. On the 14th of June following, Mr. William Kitts was appointed by the probate court administrator on the estate, and proceeded to act. The complainant endeavored to get the defendants to make their mortgage on the land to

secure the debt, but failed. He thereupon proceeded in equity to foreclose the mortgage given by Jesse Holcomb.

The bill was filed on the 21st of December, 1869, against the administrator and the present defendants, and the facts, that the mortgage was not recorded and had been destroyed, were fully and distinctly set forth. On the same day the usual notice of pendency of suit was recorded in the office of the register of deeds.

On the 22d of January, 1870, subpœna to answer was served upon the defendants in such case. After such service of process, and after the defendants had secured and consulted with counsel, it was arranged that the suit should be discontinued; that the complainant should turn over to the defendant William the claim and demand held by the complainant on account of his sale of the land to Jesse, the decedent, and that in consideration thereof the defendants should give their note and a mortgage on the premises to complainant, and running one year, with interest at ten per cent., for the amount back on the old debt, which was past due, and including the costs in the foreclosure case.

This arrangement appears to have been made at the county seat, and in the immediate vicinity of the office of the register of deeds, where the notice of object of suit was recorded, and where the records showed the mortgage unrecorded, and of the office of the register in chancery, where the bill in the foreclosure case was on file. It also appears to have been made on deliberation, and after counsel had been fully and freely consulted.

As already stated, this arrangement appears to have been made on the first of April, 1870, and on that day the complainant ceased to prosecute the foreclosure suit and delivered over to the defendant William the old note given by Jesse, and the defendants on their part executed and delivered the note and mortgage agreed upon. Nearly three months afterwards, and while the extended time under the new arrangement was running, namely: on the 28th of June, 1870, the defendant William filed his petition in

the probate court to have allowed to himself, against the estate of his father, the note and claim received from complainant; and such proceedings were had, that nearly five months after the arrangement, namely: on the 12th of September, 1870, he succeeded in getting his petition allowed, and the probate court awarded to him the sum of one thousand two hundred and ninety-five dollars and eighteen cents.

About eight months thereafter, and on the 6th of May, 1871, and when the note and mortgage he had given had fallen and were past due, he sought to rescind the arrangement made with complainant, and to that end tendered back the old note, accompanied by an assignment of the allowance by the probate court, and demanded the cancellation of the mortgage and note given by himself and wife to complainant. The complainant refused, and on the 31st of the same month filed his bill to foreclose the mortgage so given by defendants.

They subsequently answered and set up that the defendant William purchased the premises of his father Jesse in good faith, for a valuable consideration, and without notice of any incumbrance held by complainant; that they were induced to give the mortgage sought to be foreclosed, by the false and fraudulent representation of complainant, that Jesse Holcomb mortgaged the premises for two thousand dollars, and interest, that the mortgage had been recorded and was still subsisting, and held by complainant, that no part of it had been paid, and that it would be immediately foreclosed if not paid. At the time of filing their answer the defendants filed their cross-bill, in which they set up substantially the same matters, and prayed to have the note and mortgage delivered up and cancelled.

The complainant answered the cross-bill, denying the fraud, and the proofs having been taken, the court below decreed for the complainant in the original cause, and dismissed the cross-bill. The defendants thereupon appealed.

This outline of the controversy sufficiently indicates its

character.   The execution and delivery of the first mortgage by Jesse Holcomb, and the destruction of the instrument on the day it was given and before it was recorded, are facts not open to dispute and are not disputed.   Neither is it open to question but that such mortgage and the accompanying note were given by Jesse Holcomb to complainant to secure payment of the purchase money for the premises embraced by the mortgage in suit.

The complainant's counsel claims in his brief that the deed from Jesse to the defendant William was never delivered in the life-time of Jesse, and he makes the point that as a consequence the defendant William acquired no title whatever.   Were this point conceded it would be fatal to complainant, since, having parted with his right based on the transaction with Jesse, he must stand, as he attempts to do by this foreclosure suit, on the mortgage given by William.

But the defendants' counsel disputes this position, and he is clearly justified in doing so by the explicit admission of complainant in his answer to the cross-bill, as already mentioned.

The counsel for the defendants argues that the representations imputed to complainant included a representation that the mortgage given by Jesse then still constituted a lien by complainant on the land.   He also maintains that the evidence proves that complainant in fact so represented.   In this position the defendants appear to me to be sustained by the record.   It is then urged, however, that this is shown to be false; that the evidence proves that complainant had no claim against the land in virtue of the old mortgage given by Jesse, and this position is advanced on the strength of what occurred after Mrs. Sloan burnt the paper, and when complainant conversed with Jesse Holcomb about that circumstance.   The defendants contend that the talk between the parties at that time, and their subsequent conduct, satisfactorily show that it was understood and agreed by and between Jesse Holcomb and complainant

after the destruction of the paper, that the debt should thereafter rest on the note, the personal security alone, and not at all upon the land. It is not denied but that it was practicable for the parties to make such an arrangement. Neither is it doubted but that the existence of an arrangement of that kind might be shown by circumstantial evidence so as to satisfy a court of equity. But it is equally certain that such a matter ought not to be regarded as established by vague and careless expressions, or dim and shadowy inferences.

Now, the evidence here relied on by defendants to establish this result, a result apparently of importance to the parties at the time, is very slight and not sufficient to warrant the conclusion. At the time in question the debt was the full purchase price of the land, and we have no evidence to warrant the opinion that Jesse Holcomb was then thought to be sufficiently responsible to give to his note the character of adequate security. Subsequent events shadowed forth in the record indicate the contrary. A mortgage on the land had been stipulated for in the outset, and had been given. It had then been thought a necessary security,—a security, the preparation of which, including the stamps, must have cost from three to five dollars. It was then deemed of sufficient importance to justify such outlay. The debt had not been reduced, and security by mortgage was the usual form.

Men are presumed to act according to their own interests, and we ought not to infer from very slight evidence, that the complainant intended to abandon all reliance on real estate security and trust wholly to the note. The lien had been established and defined by the mortgage, and the destruction of the paper evidence of it did not annihilate the lien. It was still an available security against Jesse Holcomb, and against all others claiming with notice. A new instrument would cost several dollars, including the stamps, and it is probable that complainant, in view of this fact, and with his confidence in Jesse Holcomb, and his

opinion that the latter would do nothing to prejudice his claim under an existing but unrecorded lien, concluded to abstain from the expense of a new mortgage, and allow the debt to rest on the security in its then existing shape. The representation, then, that the mortgage still rested on the land, and that the lien depending upon it had not been effaced or given up, was not false. If not discharged, surrendered, waived or extinguished, it continued.

We next come to the other imputed misrepresentations. The defendants assert that complainant represented that the original instrument given by Jesse Holcomb as a mortgage had been recorded, was still extant and in complainant's hands, and wholly unpaid.

The complainant denies having so represented, and maintains that the defendant William had knowledge of the mortgage given by Jesse, when he received his conveyance, and also knew when the mortgage in suit was given, that the first mortgage had been destroyed.

The defendants take issue on both these last propositions. We may first refer to so much of the case as concerns the representations here imputed to complainant. In setting up this matter the object of the defendants is to avert the effect of the mortgage in suit which they executed, and the burden of proof is on them to make out their defense in the first suit and their case in the cross cause.—*Savery v. King, 35 E. L. & E., 100 ; 5 H. L., 627.* The evidence of a representation that the old mortgage had been recorded, and also that no part of it had been paid, very clearly fails.

But whether the complainant did in fact represent that it was still extant is left somewhat questionable. Aside from the testimony of defendant William Holcomb, which is *very far* from assuring, the point rests on the side of the defense upon an item in the testimony of Mr. Kitts, where he mentions that complainant, when defendant William was not present, pointed to papers then on the table while speaking of and referring to the mortgage. In view

of all the circumstances, near and remote, there is much room to question, not the veracity of Mr. Kitts, but the accuracy, either of his understanding of what then occurred, or of his recollection of it.

The register's office was near, and it was well known to complainant that a search there would disclose that the mortgage had never been recorded, and it would seem that he had not tried to keep its destruction a secret. Several years before he had fully explained that event to defendant's father and grantor, and within less than six months after this interview with Mr. Kitts, he stated all the facts about it in the bill which he filed to foreclose it. He swears that he did not make the representation; and it seems difficult to believe that he meant to suggest to Mr. Kitts that the mortgage was then present and lying on the table, when he knew it had been burnt, and when he was aware that others knew it, and also that the fact must soon be well known. After the most thoughtful attention to the subject, the evidence does not appear to be sufficiently persuasive to produce entire satisfaction. It does not seem to me to be of that substantial and convincing kind which the exigency of the defendants' case calls for. Still, if it should be admitted that this identical representation was in fact made, the effect of it would yet remain to be considered, and I do not perceive how, upon this record, it could be regarded as of any decided importance. Whether the instrument was existing or not would be immaterial if the lien of the old mortgage remained and the defendants had timely notice of it. That as between the original parties it did remain, we have already found, and I regard it very clearly proved by a preponderance of evidence, direct and presumptive, that he had notice of the incumbrance when he took his conveyance.

But the case is open to another consideration which requires attention. The defendants received in exchange for the mortgage in suit the claim which complainant held theretofore. The old note was passed to the defendant

William.   This, as before stated, was on the first day of April, 1870, and when the defendant seeks to support his case on a material point by his own testimony, it is not unreasonable to hold him to his own statement as to the time when he discovered the alleged frauds.   He swears in substance that he made the discovery within a few minutes after he delivered his mortgage to complainant, and then called for a rescission.

Notwithstanding this discovery, he waited nearly three months, and then deliberately, and after having obtained counsel, prosecuted as his own, in the probate court, the very claim received for the mortgage, and carried on that proceeding until the 12th of September, more than five months afterwards, when he obtained judgment in that court in his own favor and against his father's estate, and thereby secured an allowance of one thousand two hundred and ninety-five dollars and eighteen cents; and Mr. Kitts swears that the estate is good for more than sixty-two cents on the dollar of this claim.

Assuming, for the present purpose, but without deciding, that the complainant was guilty of the fraud imputed, that he falsely represented that he had in his hands the very instrument made by Jesse Holcomb, it was then incumbent on the defendant on discovering the fraud to elect either to affirm the arrangement he had made with complainant, or to rescind it and restore what he had received.   And I think the course he pursued in deliberately prosecuting to final allowance in his own favor the very claim he got for the mortgage in suit, was an election on his part to affirm the transaction, and such as to preclude him from having recourse to the method adopted in this case.   He was not at liberty to treat the claim taken for the mortgage as his own, to prosecute it to final judgment or allowance, and then, when called on for the consideration given for it, to turn round and assert a right to elect again and in a way to stultify his first election.—*Disbrow v. Jones, Har. Ch.,* 102; *Street v. Dow, Har. Ch., 427; Jewett v. Petit, 4*

*Mich.*, *508 ; Lloyd v. Brewster, 4 Paige, 537 ; Sar. & Schen'y. R. R. Co. v. Row and Tredway, 24 Wend., 74 ; Bank of Beloit v. Beale, 34 N. Y., 473 ; Bronson v. Wiman, 10 Barb., 406 ; Wheaton v. Baker, 14 Barb., 594 ; Lindsley v. Ferguson, 49 N. Y., 623 ; Sweetman v. Prince, 26 N. Y., 224 ; Kennedy v. Thorp, 51 N. Y., 174 ; Joslin v. Cowee, 52 N. Y., 90 ; Smith v. Baker, 5 Eng., 323, L. R., 8 C. P., 350 ; Morris v. Rexford, 18 N. Y., 552.*

Upon the whole case I see no ground for disturbing the decrees made by the court below, and I think they ought to be affirmed, with costs.

CAMPBELL, and COOLEY JJ., concurred.

CHRISTIANCY, J., did not sit in this case.