THE STATE EX REL. LUDERMAN, Respondent, vs. FINDLEY, imp., Appellant.

*October 12 — November 3, 1886.*

*Drains: Appeal: Commissioners must all take part in decision.*

Unless all of the five commissioners selected under sec. 1362, R. S., upon an appeal from the determination of town supervisors in relation to a drain, qualify and participate in the hearing and decision of the matter, the decision is of no validity or effect.

APPEAL from the Circuit Court for *Jefferson* County.

Upon the petition of the relator a writ of *certiorari* issued out of the circuit court, directed to C. W. Ludtke, town clerk of the town of Cold Spring in said county, requiring him to certify and return to that court all proceedings, matters, and things relating to the laying out by the supervisors of a ditch in said town, and relating to the appeal from the order of the supervisors laying out the same. The town clerk made due return to the writ. The facts will sufficiently appear from the opinion. The defendant *Findley* applied to be made a party defendant and for leave to defend, which motion was granted.

The circuit court, after a hearing, rendered judgment reversing the decision of the commissioners on the appeal from the order of the supervisors. From that judgment the defendant *Findley* appealed.

*W. H. Rogers*, for the appellant.

*Geo. W. Bird*, for the respondent.

ORTON, J.    Six or more freeholders of the town, of whom the relator was one, applied to the supervisors, under ch. 54, R. S., relating to drains, to lay out and establish a ditch or drain, a part of which was on the land of the relator, and a part on the land of the appellant.    The supervisors laid out and established the same according to said application. *John Findley*, the appellant, feeling himself aggrieved by the decision, filed in the office of the town clerk a notice of appeal therefrom, and also a notice that he would apply to a justice of the peace of the county for the appointment of commissioners to hear and determine said appeal, and the justice thereupon made out a list of fifteen freeholders, and from such list ten persons were stricken off according to sec. 1362, R. S., and the five not stricken off were summoned to serve as commissioners to determine said appeal, but only four of them appeared or took the necessary oath, or proceeded to examine the lands, or participated in the decision and judgment on said appeal.    The decision of four of said commissioners was reduced to writing, and signed only by them, and returned to the justice, and by such decision the decision and judgment of the supervisors laying out and establishing said ditch or drain were in all things reversed. This writ of *certiorari* was directed to the town clerk to produce these records.    On the hearing in the circuit court the decision of the four commissioners was reversed.

We need notice only one reason urged by the learned counsel of the respondent in support of the judgment of the circuit court, as that reason appears to be fatal to the decision of the commissioners.    The statute (sec. 1362, R. S.) requires the selection and qualification of five commissioners, no more and no less.    They are all to meet at the time and place mentioned in the summons, " to serve as commissioners, to hear and determine the matter embraced in such appeal," and the justice then and there delivers to them the certified copy of the notice of appeal, and then " the com-

missioners shall be duly sworn to justly and impartially discharge their duties as such commissioners," and then proceed to examine the lands, etc. One of the persons so selected to act as commissioners was summoned, but did not appear, take the oath, or participate in the action or decision of the other four commissioners, but left the state. This defect is fatal.

1. The five commissioners, when fully qualified to act by taking the oath, constitute a *quasi* judicial tribunal or court of appeal, authorized to affirm or reverse the "determination or judgment" of the supervisors laying out and establishing the ditch or drain. They must examine the lands, and "may administer oaths and examine witnesses," and "shall hear any reasons which may be offered for and against the determination or judgment of the supervisors," and reduce their decision to writing. They are summoned and returned like a jury on *venire* from a justice of the peace. Their decision on the merits of the subject matter of the appeal is final, and cannot be reviewed. Precisely fifteen freeholders are first selected by the justice, and then from such list five are struck off by each party, leaving exactly five to constitute this tribunal whose duties are thus prescribed, and while they are hearing the case "they may continue the hearing of *the cause* from day to day." It is clear enough that to constitute this tribunal the whole number so selected must qualify by taking the required oath, so that the body may act according to the direction of the statute. Four such persons cannot form this tribunal, and until it is formed and constituted according to law it has no jurisdiction over the matters of the appeal.

2. The statute would seem to require also the joint action of the whole number so far as the hearing and decision are concerned. It provides, *ex industria*, that "the decision of *said commissioners* shall be reduced to writing, *and signed by them, or a majority of them.*" Why provide that a

AUGUST TERM, 1886.                89

The State ex rel. Luderman vs. Findley, imp.

majority of them may sign the decision so reduced to writing, and not that a majority of them may decide the appeal. If the statute (sec. 4971, R. S.) which provides that a majority of officers or other persons to whom a joint authority is given may act, was applicable, or intended to be applicable, to this commission, then a provision that a majority may sign the judgment was unnecessary, for the general statute would govern both the decision and the signing of the written document as a record of it. This authority of a majority to sign it, after the decision of the commissioners had been reduced to writing, would seem to be prudential and provisional, if, for some reason, one or even two could not be found to sign it just at the time it was required to be returned to the justice, and to cure such an accident. But the expression of this authority to a majority to sign the written document is an exclusion of any authority of less than the whole number to hear and decide the cause, by a familiar rule. In view of the above sec. 4971, we think we may well say that the section under which this commission was appointed does expressly declare that all of the commissioners must meet and take the oath and be qualified to perform the duties required, and that the only exception to the full execution of this joint authority is that a majority may sign the written decision, which is merely formal, and not material to the qualification, the hearing, or the decision of the tribunal. In this respect this case is materially different from *Darge v. Horicon I. M. Co.* 22 Wis. 417; *State ex rel. McCune v. Goodwin,* 24 Wis. 286; *Williams v. Mitchell,* 49 Wis. 284; and *Melms v. Pfister,* 59 Wis. 186. This case is like and ruled by *Ashley v. Eggers,* 59 Wis. 563. That was the case of the appointment of three commissioners by the county court to examine and adjust claims against an estate. They were required to qualify by taking an oath. Only two thus qualified. It was held that their proceedings were void. The chief justice said in his opinion: "And in order to form

or constitute a legal board the persons composing the same must both be appointed by the county court, *and then they must be sworn* to a faithful discharge of their duty before they can consider claims presented." It is so here. The five commissioners must first take the oath, and then proceed to view and examine the lands, and hear the evidence, and decide the cause. 6 Wait's Act. & Def. 532, and cases cited.

It follows that the decision of the commissioners reversing that of the supervisors is void, and should itself be reversed, and that the judgment of the circuit court reversing the same should be affirmed.

*By the Court.* — The judgment of the circuit court is affirmed.