THE KEARNEY MILLING AND ELEVATOR COMPANY, Appellant, v. THE UNION PACIFIC RAILWAY COMPANY AND THE CITIZENS' STATE BANK, Intervener.

THE ELM CREEK ELEVATOR COMPANY, Appellant, v. THE UNION PACIFIC RAILWAY COMPANY AND THE CITIZENS' STATE BANK, Intervener.

**Fraudulent Purchase:** STOPPAGE *in transitu.* A seller of grain on credit, who learns, while it is in transit, that the buyer is insolvent and intends to get possession with intent to defraud, may rescind the sale.

DEEMER, J., dissenting.

RESCISSION: *Estoppel.* If the seller thereupon orders the carrier not to deliver the shipment to the consignee, and also sells it as his absolute property, with full knowlege of all the material facts, he thereby elects to rescind the sale, and he cannot thereafter claim, one to whom the buyer had transferred the bills of lading, against that the stoppage *in transitu* created a lien for the purchase price.

DEEMER, J., dissenting.

NOTICE OF RESCISSION. A seller, on rescinding a sale and stopping the goods in transit, should give notice to the buyer of an intention to resell.

KINNE, J., dissenting from the decision as a whole.

*Appeal from Pottawatamie District Court.*—HON. A. B. THORNELL, Judge.

MONDAY, APRIL 13, 1896.

ACTION at law to recover the possession of certain car loads of grain. The Citizens' State Bank intervened in each case, and claimed to be the owner of the grain. By agreement of the parties the two actions were tried together, as one. After the evidence had been submitted, a motion for a verdict for the intervener in each case was sustained, and verdicts

97 719
98 433
101 100
97 719
107 50
97 719
109 281
109 424
97 719
111 170
111 174
97 719
113 150
113 502
97 719
114 290
97 719
116 728
97 719
122 286
97 719
126 414
126 724
97 719
e128 74
97 719
130 628
97 719
137 304

were returned, and judgments rendered in accordance with that ruling. The plaintiffs appeal.—*Affirmed.*

*Sims & Bainbridge* for appellants.

*Hart & McCabe* for appellees.

Robinson, J.—In November, 1891, the Brown Bros. Grain Company, a corporation, was engaged in the business of buying and shipping grain, and had its principal places of business at Council Bluffs and Omaha. About the twelfth day of that month, the plaintiffs sold to the company several car loads of wheat and rye. The grain so sold was delivered to the Union Pacific Railway Company, at stations in Nebraska, to be transported to Council Bluffs, and there delivered to the purchaser. Bills of lading, in which the grain company was named as consignee, were issued by the railway company, and delivered to the plaintiffs. They were forwarded by mail to the consignee, and drafts on it for the price of the grain were drawn, and forwarded through banks for collection. The bills of lading were delivered by the consignee to the intervener, in exchange for other bills of lading, to be held as collateral security for the payment of two promissory notes, made by the consignee to the intervener, for the aggregate sum of twelve thousand dollars. The drafts drawn by the plaintiffs were not paid, and on or about the eighteenth day of November, learning that the grain company was insolvent, and that the grain was still in the cars, and in the actual possession of the railway company, the plaintiffs notified it not to deliver the grain to the consignee. A few days later, these actions were commenced. The grain was obtained by means of them, and sold by the plaintiffs without any notice of any kind to the grain company,

or to the intervener. The first petition filed in each case alleged that the plaintiff therein named was the absolute and uaqualified owner of the property sought to be recovered. In January, 1892, the intervener filed, a petition of intervention, in each case, alleging that it was entitled to the grain in controversy, to be held as collateral security for the payment of the indebtedness, on account of which the bills of lading had been delivered to it. In February, 1893, the plaintiffs filed, to the petition of intervention, their answer, in which they alleged that before the grain reached Council Bluffs they learned that the consignee was insolvent, and was disposing of its property for the purpose of defrauding its creditors, and was intending to get possession of the grain, if possible, and transfer it, with the intent to cheat and defraud the plaintiffs out of the purchase price; that the plaintiffs elected to rescind the sale by stopping the grain *in transitu;* and that they did so stop it, and obtained possession of it by the process of replevin. In December, of the same year, the plaintiffs filed amended and substituted answers, in which were set out more fully the matters pleaded in the original answers. In February, 1894, the plaintiffs filed amended and substituted petitions, in which they alleged the sale of the grain in question, to the grain company; that while the grain was in transit, they learned that the purchaser was insolvent and unable to pay for the grain, and that, thereupon, they notified the railway company not to deliver the grain to the consignee, and elected to stop it and regain possession of it, for the purpose of asserting and regaining their lien thereon for the unpaid purchase price; that the consignee was, in fact, insolvent, and unable to pay for the grain, but that the plaintiffs had no knowledge of the insolvency and inability to pay for the grain, until after it had been shipped; that by reason of the facts stated, the

plaintiffs became entitled to the immediate possession of the grain. At the same time they filed second substituted answers to the petition of intervention, and filed amendments thereto a few days later. In these, the most of the statements of the first and second answers, are repeated, in substance; and it is alleged, further, that the intervener had full knowledge of the condition and fraudulent intent of the grain company, and received the bills of lading to aid it in delaying, hindering, and defrauding its creditors, and that the transfer of the bills of lading to the intervener was without consideration. The averments of the substituted petition in regard to the election of the plaintiffs to stop the grain in transit, for the purpose of securing the payment of the purchase price, are, in substance repeated, and a lien upon the grain, paramount to any right thereto of the intervener, is alleged. In its replies to the final answers to the petition of intervention, the intervener alleges that, for reasons stated, the plaintiffs are estopped to assert any right to or interest in the grain adverse to it; that they elected to and did rescind the contract of sale, and cannot now assert a lien on the grain by virtue of a stoppage *in transitu.* The motion for a verdict in each case was based upon two grounds, of which the first was, in substance, that the plaintiffs had elected to rescind the sale, and therefore could not enforce a lien for the purchase price; and the second was that the title acquired by the intervener through the transfer of the bills of lading had not been impeached. The claim of the appellee in regard to the matters included in the first ground of the motion are that the plaintiffs, as against the grain company, had the right to select either of two remedies, to-wit: (1) To rescind the contract of sale, and recover the grain, as its absolute and unqualified owner; or (2) to stop the grain in transit, and enforce their vendors' lien for the purchase

price. It is further claimed that these remedies are so inconsistent, that an election to pursue one, terminates the right to resort to the other, and that the plaintiffs made an irrevocable election to rescind the sale; therefore, that they cannot enforce a vendors' lien in this action. The appellants deny that they had a choice of remedies, and insist that the changes in their claims of interest in the property were permissible under their right to amend the pleadings.

I. The rule in regard to the election of remedies is stated in *Thompson v. Howard*, 31 Mich. 312, as follows: "A man may not take two contradictory positions, and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again." "Any decisive act of the party, with knowledge of his rights and of the fact, determines his election, in the case of conflicting and inconsistent remedies." *Washburn v. Insurance Co.*, 114 Mass. 175; *Sanger v. Wood*, 3 John. Ch. 421; *Rodermund v. Clark*, 46 N. Y. 354; *Sloan v. Holcomb*, 29 Mich. 160; *Crompton v. Beach* (Conn.) (25 Atl. Rep. 446); *Crook v. Bank* (Wis.) (52 N. W. Rep. 1131); *O'Donald v. Constant*, 82 Ind. 213; Bish. Cont., sections 678-680, 683; 6 Am. & Eng. Enc. Law, 250; *Heinze v. Marx* (Tex. Civ. App.) (23 S. W. Rep. 704); *Thomas v. Joslin*, 36 Minn. 1 (29 N. W. Rep. 344); *Morris v. Rexford*, 18 N. Y. 552. In *Connihan v. Thompson*, 111 Mass. 272, it was said: "The defense of waiver by election arises when the remedies are inconsistent, as where one action is founded on an affirmance, and the other

on a disaffirmance, of a voidable contract, or sale of property. In such cases any decisive act of affirmance or disaffirmance, if done with knowledge of the fact, determines the legal rights of the parties once for all." Where a vendor elects to rescind the sale of goods on the ground of a fraud, and recovers possession of them by an act of replevin, he cannot afterwards, on failing to obtain adequate relief in that action, claim of the assignee of the insolvent purchaser as for goods sold. One theory is totally at variance with the other. "If one elects between two inconsistent remedies, the right to pursue the other is forever lost." *Farwell v. Myers*, 59 Mich. 179 (26 N. W. Rep. 328). A contract of sale obtained by fraud, is not void, but voidable, and the contract "continues until the party defrauded has determined his election by avoiding it, and, when once rightfully determined, it is determined forever;" and the bringing of an action to recover the property sold is such an election. *Powers v. Benedict*, 88 N. Y. 606. A party cannot both affirm and rescind a contract, and the commencement of an action, with full knowledge of the facts, is an election which is final, and the discontinuance of the action is immaterial. "When it becomes necessary to choose between inconsistent rights and remedies, the election will be final and cannot be reconsidered, even when no injury has been done by the choice, or would result from setting it aside." *Terry v. Munger* (N. Y. App.) (24 N. E. Rep. 272); 2 Herm. Estop., sections 1045-1051. In *Bulkley v. Morgan*, 46 Conn. 393, it appeared that one Brennan had purchased goods of the plaintiff by fraud, which would have authorized him to rescind the sale and reclaim the goods. With knowledge of the fraud, he commenced an action for the value of the goods, and attached them to secure his claim. He afterwards discovered that his action was prematurely brought, and dismissed it, and then brought an action

of trover for the goods. It was held that he had affirmed the contract, with full knowledge of all the facts, and could not afterwards rescind it. See, also, *Acer v. Hotchkiss*, 97 N. Y. 395. If an agent for the purchase of stock exceed his authority, his principal may ratify his act; and any expression of assent on his part, either by words, or conduct, would bind him, "not on the principle of estoppel, but as in other cases of election." *Metcalf v. Williams*, 144 Mass. 452 (11 N. E. Rep. 700). "Where a man has an election between several inconsistent courses of action, he will be confined to that which he first adopts. The election, if made with knowledge of the facts, is in itself binding. It cannot be withdrawn without due consent. It cannot be withdrawn, though it has not been acted upon by another by any change of position." Bigelow, Estop. 673. "The defrauded party to a contract has but one election to rescind the same. If he once determines his election, it is determined forever. Hence, if it be shown that he has at any time, after knowledge of the fraud, either by express words, or by unequivocal acts, affirmed the contract, his election is irrevocable." Bigelow, Fraud, 436. "Ratification or election, once made, expressly or impliedly, is irrevocable, and binds, not only the party, but all claiming under him." Herm. Estop. section 1065. It was said in *Pence v. Langdon*, 99 U. S. 578, in regard to a fraudulent sale of shares of stock, "The election to rescind or not to rescind, once made, is final and conclusive." The election to rescind waives the right to sue on the contract. Tiff. Sales, 120, 121. "A statement in a plea, by the party from whom the property passed, that he claims back the property, on the ground that he was induced to part with it by fraud, is as unequivocal a determination of his election to avoid the transaction as could well be made. * * * After succeeding by means of such a plea,

the person pleading it could never successfully set up the contract as still valid." *Clough v. Railway Co.,* L. R. 7 Exch. 36. The assignee in bankruptcy of a person who made a fraudulent conveyance of property, "has an election, not of remedies, merely, but of rights. But an assertion of one is necessarily a renunciation of the other." The assignee may demand the property, on the ground that the sale was void, or he may demand the price, but he cannot do both. If he commence an action for the price, and cause the property of the purchaser to be attached to secure it, this is an unequivocal assertion that the sale is not impeached, and, if done with knowledge of the facts, is conclusive. *Butler v. Hildreth,* 5 Metc. (Mass.) 49. The rule we have been considering is not confined to contracts for the sale of property, but is of general application. Thus, a party holding personal property by virtue of a mortgage or pledge, may waive his claim under the mortgage or pledge, and attach the property in a suit to recover the debt for which the mortgage or pledge was given. Such an attachment is in itself a waiver of the claim, under the mortgage or pledge. The lien created by the latter is essentially different from that created by the attachment, and the two cannot exist at the same time. *Evans v. Warren,* 122 Mass. 303. See, also, *Whitaker v. Sumner,* 20 Pick. 404; *Wingard v. Banning,* 39 Cal. 543; *Libby v, Cushman,* 29 Me. 429; *Jacobs v. Latour,* 5 Bing. 130; *Sensenbrenner v. Mathews,* 48 Wis. 250 (3 N. W. Rep. 599). The commencement of an action to enforce a lien on certain machinery, although the action was dismissed by the plaintiffs without a trial, on the merits, was inconsistent with their ownership of the property, and was an election to treat the title as not in them. *Van Winkle v. Crowell,* 146 U. S. 42 (13 Sup. Ct. Rep. 18); *Lehman v. Van Winkle* (Ala.) (8 South Rep. 870). Where the owner of land sues for the value of timber taken

therefrom, he cannot afterwards maintain an action for the conversion of the timber, even though the court in which the first action was brought, did not have jurisdiction of the defendant in that action. *Nield v. Burton*, 49 Mich. 53 (12 N. W. Rep. 906). The decisions of this court are in harmony with the authorities cited. *Klocow v. Patten*, 93 Iowa, 432 (61 N. W. Rep. 926); *Schneitman v. Noble*, 75 Iowa, 121 (30 N. W. Rep. 224); *Bank v. Dows*, 68 Iowa, 460 (27 N. W. Rep. 459).

It is clear, under the rules of the cases we have been considering, that, if the right to elect existed, the action of the plaintiffs in taking the grain in controversy and selling it, under a claim of absolute ownership, with full knowledge of all the material facts, was an election of rights and remedies which was final and conclusive. The claim under which these actions were commenced in November, 1891, was that the plaintiffs were the absolute and unqualified owners of the grain. Taking possession of it, and acting on that claim, they sold it forthwith as their own, and did not modify their claim of ownership until February, 1894, when the amended and substituted petitions were filed. It is not averred in the pleadings as amended, nor is it shown by the evidence, that the claim of absolute ownership was made under any mistake. So far as we are informed, it was made with full knowledge of all material facts, and it necessarily involved the conclusion that the contract of sale had been rescinded. The grain was sold as the property of the plaintiffs, without notice of any kind to the grain company or to the intervener. It is true, the right to sell may not have depended upon the giving of notice. But it is the better practice for the vendor who exercises the right of stoppage *in transitu* to give a notice of an intention to resell the goods, when it is practicable to do so. *Holland v. Rea*, 48 Mich. 218 (12 N. W. Rep. 167); *Van Brocklen v. Smeallie*,

140 N. Y. 75 (35 N. E. Rep. 415); *Ullmann v. Kent*, 60 Ill. 271; *Saladin v. Mitchell* 45 Ill. 85; *Hiscock v. Hoyt*, 33 Conn. 558; *Brownlee v. Bolton*, 44 Mich. 218 (6 N. W. Rep. 657); Benj. Sales (Bennet's 6th Ed.) 775; Tiff. Sales, 228. And the fact that such notice is not given, if unexplained, tends to show an intention to rescind the sale. *Redmond v. Smock*, 28 Ind. 370.

4        According to the weight of authority the mere exercise of the right of stoppage *in transitu* does not operate to rescind the sale; but that conclusion is for the benefit of the vendor, as it may be to his advantage to resell the goods, under proper conditions, and hold the vendee for the loss, if any, sustained by his failure to perform the contract. But until the sale is rescinded, the vendee, or his assignee, has the right to take the goods on payment of the contract price; and, if the vendor does not then deliver them, he is responsible for the damages which result from his failure to do so. *Diem v. Koblitz*, 49 Ohio St. 41 (29 N. E. Rep. 1124). But, when the vendor rescinds the contract of sale, the right of the vendee to the goods sold is at an end. The rights and liabilities of the parties to a contract of sale which has been rescinded are entirely different from those which exist where the right of stoppage *in transitu*, only, is exercised. From November, 1891, until February, 1894, the plaintiffs asserted, in effect, by their pleadings and by their conduct, that the contract of sale had been rescinded, and prevented the grain company and the intervener from paying the contract price and taking the grain, had they desired to do so. Certainly, this was conclusive evidence of rescission, so far as it could be effected. But it is said that the relief which the plaintiffs have at all times sought, was obtainable by an action for the recovery of the grain, and that it was within their right to modify their claim as to their interest in the grain by

amending their pleadings at any time before the trial. Their right to amend is not disputed, but the effect of the amendment is another matter. The fact that the property in question might have been recovered by an action of replevin, whether the plaintiffs were the absolute owners of the property, or were merely entitled to the possession of it for the purpose of enforcing a lien, is not decisive of their right to recover, even if the averments of the pleadings as amended be sustained. The controlling considerations are that, with knowledge of the facts, they elected to rescind the contract of sale, and acted upon that election, and that their subsequent attempt to revive the contract, and treat it as in force, is wholly inconsistent with the election as first made. They sought to recover the property, in each case, it is true, but in the first case on the ground that they had not sold it, and in the other on the ground that they had sold it, and were entitled to it, as a means of securing payment of the price. As we have seen, they cannot affirm the contract, after having elected to disaffirm it.

II. The appellants deny that they had a choice of remedies, and insist that the facts set out in their pleadings did not show that they were entitled to rescind the sale, but only to stop the grain in transit for the purpose of enforcing against it their demands for the unpaid purchase price. It may well be questioned whether the plaintiffs, after having derived all possible benefits from their election to rescind, should be permitted to avoid the effects of their election on the ground that what they did was in violation of law. But we do not find it necessary to determine that question. Ordinarily the effect of the exercise of the right of stoppage *in transitu* is to vest in each party to the contract of sale the rights he had before the possession of the goods sold was delivered to the carrier. *Cox v. Burns*, 1 Iowa, 68; *Babcock v. Bonnell*, 80

N. Y. 244; Tiff. Sales, 226, Story, Sales, section 320; 2 Kent, Comm., 540; 1 Pars. Cont., 598; 23 Am. & Eng. Enc. Law, 932. And it is, perhaps true, that the mere insolvency of the buyer will not authorize the seller, who has effected a stoppage *in transitu*, to rescind the sale. 2 Benj. Sales, sections 1166–1299, note. It is also, probably true, as a general rule, that the intent of the buyer, formed after the sale of the goods, and their completed delivery to him, not to pay for them, would not be sufficient to authorize the seller to rescind the sale on the ground of fraud. *Starr v. Stevenson*, 91 Iowa, 684 (60 N. W. Rep. 217; *Burrill v. Stevens*, 73 Me. 400; Tied. Sales, section 170.

6        But it is well settled, that when goods are sold on credit, the seller has the right to rely on the presumption that the buyer intends to perform his obligations by paying for the goods; and, if the latter then, has a secret intention not to make payment, that intent, and his failure to disclose it, will entitle the seller to rescind the sale and recover the goods, even though they have passed into the possession of the buyer. *Reid v. Cowduroy*, 79 Iowa, 169 (44 N. W. Rep. 351), and cases cited therein; *Bughman v. Bank*, Pa. Sup. (28 Atl. Rep. 209); 2 Pom. Eq. Jur., section 906. In this case, the admitted facts, show that the plaintiffs did not know of the insolvency of the grain company, nor of its contemplated fraud, when the sale was made; that the plaintiffs learned those facts while the grain was in transit; and that they then notified the carrier not to deliver the grain to the grain company, and recovered the actual possession of the grain. The question, on this branch of the case, which we are required to determine, is whether the plaintiffs had the right to rescind the contract of sale. We are of the opinion that they did have the right, as against the grain company. If the company had been insolvent, and unable to pay for the grain, when the sale was made, and if

it then had the intention not to pay for the grain, and if these facts had been concealed from the sellers until after the sale and delivery of the grain, it is clear that the plaintiffs could have rescinded the sale and recovered the grain. We think it logically follows that if such facts were discovered after the sale, but before the delivery, the seller could have refused to deliver the grain, and rescinded the sale. In the case as it is submitted to us, it appears that the plaintiffs rightfully prevented a delivery of the property, and secured possession of it. When that had been done they knew that the buyer could not pay for the grain if it were delivered, and that it intended not to pay for it. We know of no rule of law which could compel the sellers to treat the contract of sale as in force, under such circumstances. Ordinarily, if a party to a contract is unable or refuses to proceed with it, the other party may rescind it. Bish. Cont. section 827. If a contract of sale is not completed, by reason of the failure of the buyer to comply with his part of the agreement, the seller may treat the goods as still his property, and sue the buyer for damages. Tied. Sales, section 333. In *Morris v. Rexford*, 18 N. Y. 552, it was said that "a vendor may reclaim his goods after a delivery upon a sale for immediate payment, if the vendee, on getting the property into his possession, refuses to make payment. If there be no terms of credit expressed or implied in the delivery, the delivery in such case is deemed to be conditional, and subject to revocation on the refusal or failure of the purchaser to pay the price." See, also, *Palmer v. Hand*, 13 Johns. 435. In *Henry v. Vliet* (Neb.) (54 N. W. Rep. 122), it was held that where goods were sold on condition that they were to be paid for on delivery, and they were delivered without payment being made, the seller could reclaim them. It is not necessary to go so far as do some of the cases cited to sustain

the right of the appellants to rescind the sale. Time was not given for the payment of the grain in question, but it was to be paid for on the presentation of the drafts, which were presented for payment before the grain had reached its destination; and possession had been taken by the appellants, before there had been any actual delivery to the buyer. They found themselves entitled to the possession of the grain, without liability to surrender it to the buyer, excepting under a contract of sale, which the buyer could not, and would not perform on its part. Under the circumstances, the sellers were fully authorized to rescind the contract. Having done so, and sold the grain under a claim of absolute ownership, their election was final. On the trial of the case they relied upon an alleged right to a lien which was shown not to exist, and, as there was no material conflict in the evidence in regard to it, the motions for verdicts were properly sustained.

III. The questions we have determined are controlling, and it is unnecessary to consider other questions discussed. It is proper to say, however, that we incline strongly to the opinion that the result reached effects, substantially, justice between the parties. The plaintiffs might have secured their claims for the grain by sending the bills of lading, with the drafts drawn for the purchase price, to the banks, for collection; but they failed to do so, and, by sending the bills of lading to the grain company, enabled it to exchange them for similar bills held by the intervener as collateral security. There is nothing in the record which shows lack of good faith on the part of the intervener. Its transactions with the grain company were in the ordinary course of business, without knowledge of the fact that the price of the grain in question had not been paid. It may be that the

plaintiffs would have been entitled to recover, as against the intervener, had there been no election to rescind; but, if so, it would have been on technical grounds. For the reasons shown, we are satisfied with the judgment of the district court, and it is AFFIRMED.

DEEMER, J. (dissenting).—I do not think there was an election of remedies, nor do I think the plaintiffs had any right of rescission. If they made any election it was, in the first instance, to stop the goods in transit.

KINNE, J.—I dissent from the conclusions of the majority